■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DANIEL D. PURCELL, III, Appellant. — Appeal from a judgment of the County Court of Rensselaer County (Dwyer, Jr., J.), rendered December 28, 1982, upon a verdict convicting defendant of the crime of manslaughter in the first degree. ¶ At approximately 4:45 A.M. on March 13, 1982, defendant, an off-duty City of Troy police officer, fatally wounded David D. Forette with a .25 caliber handgun in Troy. The trial evidence showed that defendant, who had been off duty since 11:30 P.M., was seated with several employees of Petar's Grill when Forette's companion, one Jerome Graham, peered into the window at which time the doorman shouted a racial slur, evoking an obscene hand gesture from Graham. An argument ensued on the street between the two groups, replete with name-calling and obscenities, and ended with Forette's group continuing north on River Street. Shortly thereafter, defendant and three others left the bar in defendant's car and proceeded in the wrong direction (north) on one-way River Street until they encountered Forette's group at the confluence of River, Third and Fulton Streets. When Forette stepped in front of defendant's vehicle, the confrontation resumed. Defendant's group exited the vehicle and followed the Forette group onto Fulton Street. As the groups dispersed, Forette walked toward the north side of Fulton Street, picked up an empty bottle, broke it against a brick wall and approached defendant, who was standing in the middle of Fulton Street. As he drew near, defendant shot Forette in the stomach. Forette died a short time later. Defendant was indicted for manslaughter in the first degree and, following a trial in which the defense of justification was raised, he was convicted as charged. This appeal ensued. ¶ Initially, defendant argues that the trial court erred in allowing the jury to view the scene of the incidents described above, after the close of the evidence and prior to summations. We disagree. CPL 270.50 (subd 1) authorizes a trial court to permit a jury view at "any time before the commencement of the summations" if the view "will be helpful to the jury in determining any material factual issue". During a recess, the trial court was advised that two jurors may have been in the vicinity of the crime scene despite the court's admonition to avoid that area. The court advised both defense counsel and the prosecution of this information, neither of whom requested further investigation of the matter. At the close of the evidence, however, the prosecutor requested a jury view. The trial court granted the motion over defendant's objection for essentially two reasons: to temper any prejudice emanating from the possibility that two jurors may have viewed the area, and to familiarize all the jurors with the area. The view was conducted during the afternoon of December 3, 1982. ¶ Contrary to defendant's contention, we consider the area involved to be sufficiently uncommon so that a view would be helpful to the jurors in their deliberations (see *People v Hamel*, 96 AD2d 644, 645, mot for lv to app den 61 NY2d 674). The trial court emphasized that the purpose of the view was to familiarize the jurors with the scene so they could physically place the buildings and roads when examining the exhibits. A significant effort, including the introduction of photographs, charts and diagrams, was made by both parties during the trial to pinpoint the precise locations of defendant and the victim throughout the incident. Accordingly, we find no abuse of the trial court's discretion in authorizing the view. Nor can we agree that the scene had so materially changed as to render the view improper (cf. *People v McCurdy,* 86 AD2d 493). Although it is obvious that the lighting and traffic conditions were different than at the time of the shooting, the court properly emphasized that the view was merely to observe the area and instructed the jury that their deliberations should be based solely on the evidence. Moreover, that the jury viewed the scene during the day, instead of at night when the shooting occurred, is of no consequence concerning defendant's ability to observe Forette, since defendant confirmed that he watched Forette pick up the bottle,

break it and approach him. Finally, defendant's contention that the view was conducted in a "circus atmosphere" is not supported in the record. ¶ Next, defendant maintains that the trial court erred in permitting several of the prosecutor's challenges for cause during *voir dire*. We disagree. Although the prosecutor utilized only 13 of its 15 allotted peremptory challenges (CPL 270.25, subd 2, par [b]), defendant argues that the challenged rulings effectively and unfairly allowed the prosecutor additional peremptory challenges (see *Matter of State of New York v King,* 47 AD2d 594, 595, revd on other grounds 36 NY2d 59). During the initiation of jury selection, the court inquired as to whether any of the prospective jurors had formed an opinion as to the guilt or innocence of defendant. The court specifically directed that no opinions be expressed. When two of the prospective jurors indicated that they had formed opinions, the court inquired as to whether each could still sit as a fair and impartial juror. At this point, one juror, a Mr. Mantello, blurted out, "I think he's innocent. I would like — I ain't got no opinion. I think he's innocent." Mantello was then excused and, upon motion of the prosecutor, the entire jury panel present during Mantello's outburst was also excused. Defendant contends that the trial court erred in excusing Mantello without first affording him a chance to take an "expurgatory oath". The contention is without merit. ¶ In *People v Blyden* (55 NY2d 73), the Court of Appeals recently reiterated that the expurgatory oath under the old Code of Criminal Procedure, insofar as it "may have been used as a mere *pro forma* recitation * * * is no longer available" (*id.,* at p 77; see *People v Culhane,* 33 NY2d 90, 104, n 2). The emphasis under CPL 270.20 (subd 1, par [b]) is on whether the juror's state of mind would impede an impartial verdict. No mechanical procedures are available to confirm a juror's impartiality. Instead, greater flexibility rests with the trial court to make this determination. It is readily apparent here that the court made an informed decision as to Mantell's ability to serve as an impartial juror. Not only did Mantello disregard the court's directive not to express an opinion, but it further appears that he was also related to a Troy police officer and may have acted to influence the other jurors in favor of defendant. These circumstances prevailing, we find no abuse of the trial court's discretion in excusing Mantello (CPL 270.20, subd 1, par [b]). In an instance where, as here, the impartiality of a juror is open to serious question, the better practice is to "lean toward disqualifying" that juror (*People v Branch,* 46 NY2d 645, 651; see *People v Provenzano,* 50 NY2d 420, 425). For the same reasons, the discharge of the remainder of the panel was proper. ¶ The prosecutor's remaining challenges for cause, premised under CPL 270.20 (subd 1, par [c]), were also properly sustained. It appears that prospective juror Jean Garrigan formerly served as a character witness for the defense attorney. Although a "nodding acquaintance" with the trial attorney does not compel disqualification as a matter of law, the better choice is to exclude such a juror (see *People v Provenzano, supra,* p 425). Considering defendant's status as a police officer, the disqualification of three prospective jurors associated with law enforcement agencies, a prospective juror whose son had been prosecuted by the District Attorney's office, and a juror whose brother-in-law was presently being prosecuted, was entirely within the trial court's discretion (see *People v Johnson,* 89 AD2d 506; *People v Harris,* 84 AD2d 63, 93-94, affd 57 NY2d 335, cert den 460 US 1047, 103 S Ct 1448; *People v Sellers,* 73 AD2d 697). ¶ Defendant's remaining arguments are unpersuasive. Any objection defendant may now have concerning the trial court's refusal to charge manslaughter in the second degree as a lesser included offense, as requested by the prosecution only, was waived upon defendant's failure to timely object (CPL 300.50, subds 1, 2; *People v Ford,* 62 NY2d 275). Since there is no reasonable view of the evidence that defendant was acting in his capacity as a police

officer (Penal Law, § 35.30, subd 1) at the time of the shooting, the court did not err in refusing defendant's request to charge that defendant, as a police officer, was under no duty to retreat (Penal Law, § 35.15, subd 2, par [a], cl [ii]; see *People v Watts,* 57 NY2d 299, 301). Finally, we recognize that defendant received the maximum allowable sentence for a class B violent felony offense of 8⅓ to 25 years' imprisonment (Penal Law, § 70.02, subds 3, 4). In view of the violent nature of this crime and defendant's failure to present any extraordinary circumstances warranting modification, we cannot say that the trial court abused its discretion in sentencing defendant (*People v Downs,* 77 AD2d 740, 742, mot for lv to app den 51 NY2d 773; *People v Dittmar,* 41 AD2d 788). ¶ Judgment affirmed. Kane, J. P., Main, Weiss, Mikoll and Levine, JJ., concur.