STATE of Missouri,
Plaintiff–Respondent,

v.

William L. REED, Defendant–Appellant.

William L. REED, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 15899, 16462.

Missouri Court of Appeals,
Southern District,
Division One.

April 6, 1990.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 27, 1990.

Application to Transfer Denied
June 19, 1990.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Craig A. Johnston, Asst. Public Defender, Columbia, for movant-appellant.

PREWITT, Judge.

Following jury trial defendant William Reed was convicted of the sale of cocaine, a controlled substance, and sentenced to five years' imprisonment. Following sentencing Reed filed a direct appeal (No. 15899) and a Rule 29.15 motion. His motion was denied after an evidentiary hearing. Reed appeals (No. 16462) from that denial. Pursuant to 29.15(*l*), the appeals have been consolidated.

As the sufficiency of the evidence to support the conviction is not questioned, the testimony presented by the state is only briefly set forth. Trooper L.N. Gregory, a narcotics investigator for the Missouri State Highway Patrol, was working with an informant, Don Evans. On July 1, 1987, Evans called Gregory and told him that Reed was "ready to sell cocaine to him on that day". Gregory and Evans then drove toward Reed's house, but before they got there saw Reed drive into a parking lot at a retail business. They turned around and followed Reed. As Reed exited the store Evans went over to Reed's car. Gregory remained in his vehicle watching them. Reed handed Evans a small paper packet containing white powder. Evans then walked to Gregory and handed him the packet. Gregory walked over to Reed's car and attempted to buy more, but Reed refused to deal with Gregory. Gregory returned to his vehicle and gave Evans twenty-five dollars which Evans took to Reed.

Gregory then took Evans home, returned to his motel room and conducted a field test on the powder. He testified that it tested positive for cocaine. Gregory sealed the packet in another plastic bag, then in a brown paper bag, sealed the bag with red tape and initialed it. Approximately five days later he delivered it to the highway patrol laboratory in Jefferson City. Between the time he took possession and delivered it to Jefferson City the packet remained in Gregory's briefcase which was kept in his possession. The chemist who tested the powder in Jefferson City testified that it was cocaine.

Reed presents four points relied on. Three relate to his jury trial. One point contends the trial court erred in denying his Rule 29.15 motion.

For his first point Reed contends that the trial court erred in not declaring a mistrial or admonishing the venire panel to disregard statements made by venireman Hunter. Acknowledging that no objection or request for mistrial or other relief was made at that time by his counsel, Reed requests "plain error" review under Rule 30.20. That rule provides that even if not properly preserved "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

Reed contends that the remarks by venireman Hunter were so prejudicial that the entire panel was contaminated. Reed has the burden to show prejudice when making a claim that the impartiality of the panel has been tainted by comments made during the voir dire. *State v. Releford*, 750 S.W.2d 539, 543 (Mo.App.1988). "The trial court is vested with broad discretion in determining whether a jury panel should be dismissed". *Id.* Prejudicial or biased answers by a particular venireman do not require disqualification of the balance of the panel unless they were "so inflammatory and prejudicial that it can be said that a right to a fair trial has been infringed." *State v. Harrell*, 637 S.W.2d 752, 757 (Mo.App.1982).

The comments complained of were responses to Reed's counsel's questions by Hunter. Earlier Hunter stated in reply to a question by the prosecuting attorney that he had known Reed's family since Reed's birth. When asked if Hunter knew "Reed personally", Hunter replied that he did. Reed's attorney then asked if Hunter could be "fair and impartial" in the matter. Hunter said he did not "think" he could and continued that "he might have done it

or he might not have done it, but I fell [sic] like he did do it, you know, because of knowing him as well as I do." Later, when a general question was asked of the venire, whether anyone knew anything about the case, Hunter replied that the "only thing I know about it is when I had a talk with him about what was happening, that's about all." Counsel for Reed then said "[w]hen you had a talk with who?" Hunter replied, "Mr. Reed."

The state moved to strike Hunter for cause and Reed's counsel objected. He testified at the hearing on the Rule 29.15 motion that he wanted Hunter on the jury because Hunter and Reed were black. At that hearing the attorney stated, "I did not hear anything from Mr. Hunter which caused me to feel he needed to be rehabilitated. I did not hear him say the statement which is presented in the transcript." Which "statement" counsel was referring to is not clear. The trial judge excused Hunter, noting that during voir dire he stated that he could not be fair and had talked to Reed about this matter.

Neither the parties nor the court have found a case in Missouri where comments by a potential juror required the disqualification of the panel. We have examined the Missouri cases cited by the parties and others and in those cases the remarks made during the voir dire may not have had the potential to be as damaging to a defendant as those present here may have. Those cases include *State v. Taylor,* 324 S.W.2d 643, 648 (Mo.1959); *State v. Weidlich,* 269 S.W.2d 69, 71 (Mo.1954); *Zeitvogel v. State,* 760 S.W.2d 466, 468 (Mo.App. 1988); *State v. Releford,* 750 S.W.2d 539, 543 (Mo.App.1988); *State v. Greathouse,* 694 S.W.2d 903, 909 (Mo.App.1985); *State v. Harrell,* 637 S.W.2d 752, 755–757 (Mo. App.1982); *State v. Williams,* 630 S.W.2d 117, 119 (Mo.App.1981).

■ Hunter stated that because he knew Reed he thought that he was guilty and that he had talked to him about the incident. These comments reflected on Reed's

character and could be interpreted as including either an admission from Reed of guilt or a disbelief of a denial. Similar comments have led to reversal in other jurisdictions. See *State v. Carmody,* 471 A.2d 1363 (R.I.1984); *State v. Massey,* 119 R.I. 666, 382 A.2d 801 (1978). Cf. also *People v. Purcell,* 103 A.D.2d 938, 479 N.Y.S.2d 768 (1984).

Reed's counsel not only asked for no relief following Hunter's comments, but opposed Hunter being excused for cause.[1] This might appear to be unusual trial strategy but perhaps the case called for some unusual strategy. The trial court could have declared a mistrial or injected itself into the voir dire by instructing the jury to disregard Hunter's statements but this appears contrary to what counsel wished. Reed's counsel deliberately bypassed any request for relief as trial strategy. Counsel not hearing Hunter's remarks is unlikely as the transcript shows that the attorney carried on a conversation with Hunter regarding them. There was testimony that others, including the court reporter, and another venireperson, heard them. Under the circumstances here we find no manifest injustice or miscarriage of justice and thus no plain error. Point one is denied.

■ Reed's second point relates to the trial court's denying his Rule 29.15 motion. It is his only point that does so. That point asserts that the trial court should have vacated the conviction because Reed's trial counsel was ineffective in not requesting a mistrial, or questioning the venire or asking the trial court to instruct the venire panel to disregard the comment of venireman Hunter. Neglect of trial counsel which prevents an impartial jury can be ineffective assistance of counsel. See *Presley v. State,* 750 S.W.2d 602 (Mo.App. 1988), cert. denied, —— U.S. ——, 109 S.Ct. 514, 102 L.Ed.2d 549 (1988).

To sustain a claim of ineffective assistance of counsel Reed must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the re-

---

1. We realize that anything short of a mistrial might be worse as trying to cure by direction of the court might have emphasized Hunter's com-

ments. However, counsel never considered this aspect.

sult of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984), reh'g denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984).

Appellate review of the trial court's ruling on a motion filed under Rule 29.15 is limited to determining whether the findings and conclusions of the trial court are clearly erroneous. Rule 29.15(j).

■ We conclude that counsel was derelict if he truly did not hear Hunter's remarks. As earlier noted that must not be so as the transcript shows he carried on a conversation with Hunter about them. Others in the court room testified they heard them. The trial court concluded, however, that the second part of the *Strickland* test was not present as it was not established that there was a reasonable probability that the result of the proceedings would have been different. There was substantial evidence of guilt and we cannot say that this determination was clearly erroneous. Point II is denied.

■ In his third point Reed contends that he was denied a fair trial due to argument of the prosecutor. In the closing argument the prosecuting attorney made reference to the country's drug problem and cocaine's role in that problem. Reed's counsel objected at trial but did not raise this contention in Reed's motion for new trial. Reed again requests review under Rule 30.20 for "plain error".

The trial court has broad discretion to control closing argument and wide latitude is given counsel in presenting it. *State v. McDonald*, 661 S.W.2d 497, 506 (Mo. banc 1983). "Ordinarily, alleged errors on closing arguments do not justify relief under the plain error rule unless they are determined to have a decisive effect on the jury." *State v. Cannady*, 660 S.W.2d 33, 39 (Mo.App.1983).

A similar argument was held not to require reversal in *State v. Williams*, 747 S.W.2d 635, 639 (Mo.App.1988). The court noted there that a prosecutor may discuss the prevalence of crime in the community and on "a matter of common knowledge like the prevalence of the sale and use of illicit drugs, the prosecutor could base an argument on that fact without record evidence of the fact." No plain error regarding the prosecutor's comments is present. Point III is denied.

Reed's last point states that exhibits 1 and 1–A allegedly containing the cocaine Reed was charged with selling were improperly admitted into evidence because there was no proper foundation. Reed contends that there was no proof that the exhibits admitted into evidence were in substantially the same condition when analyzed as when seized and that there was no chain of custody giving a reasonable assurance that the alleged cocaine was the same powder that the state's evidence said that Reed sold.

■ It is not necessary to establish constant custody of evidence from the time it is obtained until it is produced at trial nor must it be continually watched. *State v. Day*, 506 S.W.2d 497, 501–502 (Mo.App. 1974); *State v. Threat*, 530 S.W.2d 41, 42 (Mo.App.1975).

To establish a chain of custody of an item in evidence it is not necessary to account for every hand-to-hand transfer of it between the time it is obtained and its introduction at trial. *State v. Sherrill*, 657 S.W.2d 731, 736 (Mo.App.1983). Evidence necessary to establish a chain of custody is sufficient if it demonstrates a reasonable assurance that the condition of the exhibit remains the same. *Id.*

■ We conclude that the testimony was sufficient to show that the powder tested by the chemist was that received from Reed. Gregory testified that he had the packet in his briefcase from the time of the crime until it was delivered to a laboratory in Jefferson City. The laboratory in Jefferson City followed its procedures for labeling, testing, and safekeeping of evidence. The chemist was able to identify the packet and its contents at trial. Point IV is denied.

The judgment of conviction (appeal No. 15899) is affirmed. The appeal from the denial of the Rule 29.15 motion (No. 16462) is also affirmed.

CROW, P.J., and PARRISH, J., concur.