STATE of Missouri, Respondent,

v.

Alfea Lemar CRENSHAW, Appellant.

and

Alfea Lemar CRENSHAW, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 17242, 18209.

Missouri Court of Appeals,
Southern District,
Division One.

April 27, 1993.

Ellen H. Flottman, of Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Presiding Judge.

In case number CR590–238F ("case 238"), a jury found Alfea Lemar Crenshaw ("Appellant") guilty of the class A felony of trafficking drugs in the second degree, § 195.223.3(2), RSMo Cum.Supp.1989, and assessed punishment at 21 years' imprisonment. On November 6, 1990, the trial court imposed that sentence.

The same date, in the same court, pursuant to a plea agreement, Appellant entered pleas of guilty in these cases:

CR590–429F ("case 429"):

Tampering with a witness.

CR590–432F ("case 432"):

Count I, possession of cocaine;

Count II, delivery of cocaine.

CR590–474F ("case 474"):

Conspiracy to murder.

Per the agreement, the trial court imposed the following prison sentences:

Case 429: 7 years, to run concurrently with sentence in case 238.

Case 432: Count I, 7 years; Count II, 10 years; to run concurrently with each other and concurrently with sentences in cases 238 and 429.

Case 474: 15 years, to run concurrently with sentences in cases 238, 429 and 432.

As part of the agreement, the State dismissed case number CR590–473F, trafficking drugs in the second degree.

Appellant filed a notice of appeal in case 238; that appeal is number 17242.

Appellant thereafter filed a single pro se motion seeking postconviction relief in all four cases, obviously intending to invoke Rule 24.035 [1] as to cases 429, 432, and 474, and Rule 29.15 as to case 238.[2] The motion

---

1. Rule references are to Missouri Rules of Criminal Procedure (1991).

2. The State does not question the propriety of utilizing a single postconviction proceeding to

court conducted an evidentiary hearing, issued findings of fact and conclusions of law, and entered judgment denying relief.

Appellant brings appeal number 18209 from the motion court's judgment. We consolidated appeal 17242 with appeal 18209. Rule 29.15(*l*).

By appointed counsel, Appellant presents three points relied on (I, II, III) in appeal 17242, and one point relied on (IV) in appeal 18209. Pro se, Appellant presents two points relied on (V, VI) in appeal 17242. We address the appeals separately.

## Appeal 17242

Appellant does not challenge the sufficiency of the proof to support the verdict, hence we need not summarize the evidence.

■ Point I avers the trial court erred "in failing to *sua sponte* strike the entire venire panel" following a remark by a member of the venire during voir dire. The prosecutor had asked whether anyone was acquainted with Appellant, whereupon this exchange occurred:

MARY KLINKHARDT: I'm a licensed bailbondsman and we have had Mr. Crenshaw out on bond. I don't have him on this particular case. I have had him before.

Q. Would that fact alone, Mrs. Klinkhardt, prevent you from giving both the Defendant and the State of Missouri a fair trial today?

A. No, sir, it would not.

Appellant's lawyer [3] requested no relief. Later, however, he did successfully challenge Ms. Klinkhardt for cause.

Appellant maintains Ms. Klinkhardt's comment "tainted" the entire venire, as it "constituted improper reference to other crimes of Appellant from which the jury could have inferred guilt as to the instant offense." Appellant concedes that because

no relief was requested when the incident occurred, relief is available on appeal only under the plain error rule.

■ Relief under the plain error rule is granted only when the alleged error so substantially affects the rights of the accused that a manifest injustice or miscarriage of justice inexorably results if left uncorrected. *State v. Hadley*, 815 S.W.2d 422, 423[1] (Mo. banc 1991).

In *State v. Reed*, 789 S.W.2d 140 (Mo. App.1990), during voir dire a member of the venire made a remark so allegedly prejudicial that, according to the accused, the entire venire was tainted. There, as here, the accused asked for no relief when the incident occurred, but sought plain error relief on appeal. This Court found no manifest injustice or miscarriage of justice, and affirmed the conviction.

*Reed* fully discusses the case law applicable in such situations, *id.* at 141–42, and we need not repeat what appears there. Here, the venire could infer from Ms. Klinkhardt's response that Appellant had been accused of other crimes. However, they could also assume Ms. Klinkhardt was confident enough of Appellant that she was willing to accept the risk of surety on his bond. Furthermore, from Ms. Klinkhardt's comment that she could give both sides a fair trial, the venire could infer she did not assume Appellant was guilty and would base her decision on the evidence.

In *Reed*, the venireman's remarks indicated he felt the accused was guilty. 789 S.W.2d at 142. No such meaning can be ascribed to Ms. Klinkhardt's comments. Furthermore, nothing she said indicated Appellant had ever been adjudicated guilty of anything. Applying *Reed*, we find no manifest injustice or miscarriage of justice, and deny Appellant's first point.

attack all four cases collectively. Because the time limit for filing a motion under Rule 24.035 is different than the time limit for filing a motion under Rule 29.15 where an appeal is taken after trial (see Rules 24.035(b) and 29.15(b)), using a single postconviction proceeding to attack multiple convictions, some resulting from guilty pleas and some resulting from trials,

could cause timeliness problems. Here, however, the pro se motion was timely as to all convictions.

3. The lawyer representing Appellant in these appeals is not the lawyer who represented him at trial.

We next address point VI, which presents a claim under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), that the prosecutor exercised a peremptory challenge in a racially discriminatory manner by striking the only remaining black venire member from the jury panel.[4]

As reported earlier, the prosecutor asked during voir dire whether anyone was acquainted with Appellant. Venireman Albert Allen responded:

I know his father-in-law, his wife, sister-in-law, his brother-in-law; I knew all of 'em, have for the last fifteen years.

Q. You know all his family?

A. Yeah, and his father-in-law. And I saw him pass by the house a couple of times. Far as me knowin' him, I don't know him.

Q. Would the fact that you known his in-laws for fifteen years, do you think it would be difficult for you to be fair in this case?

A. Well, it wouldn't make no difference.

Q. Wouldn't make any difference?

A. No.

Q. You'd be able to sit on this case and give Mr. Crenshaw and the State of Missouri the same kind of trial as if you didn't know any of 'em?

A. Yeah.

After each side made peremptory challenges, § 494.480.2(2), RSMo Cum.Supp. 1989, the transcript shows:

The Court: ... Mr. [Prosecutor], I note that you have stricken ... Albert Allen, he is a black gentleman. Of course the Defendant is black in this case. Do you wanna make a Batson record at this time?

[Prosecutor]: ... Mr. Allen stated during voir dire that he had known the Defendant's father-in-law for fifteen years, and I think he indicated that he knew other in-laws of the Defendant. And also, when I asked him if he could put this aside, or, or this wouldn't have any affect on him, he, he said that yes, he could, but he made kind of a mannerism, kinda smiled and kinda waved his hand back and forth in front of him when he did it.... On his questionnaire he stated that his occupation was that he was disabled. He's only been a resident in the State of Missouri, according to his questionnaire, for five years. His marital status is single, which indicates to me that his state in the community is not that strong. And those are the reasons that I struck him. For the record I'd like to point out that Mr. Allen has been on other jury panels before and I have left him on the jury when there was no evidence that he was familiar with the family. And further, Mr. Allen, according to his questionnaire, lives in Hayti, which is the same place that the Defendant lives.

Appellant's lawyer objected to the peremptory challenge of Mr. Allen, arguing there were other venire members who had known Appellant's family in some way over a number of years. Pointing out that Mr. Allen had served in a previous case and was the last black member of the venire in the instant case, Appellant's lawyer asserted the prosecutor's explanation did not satisfy *Batson*.

The trial court ruled:

... I think ... all of the points made by the Prosecutor were points that I can understand the State taking in, in deciding to strike Mr. Allen as a potential juror in this case.... the Court will make the finding [that the Prosecutor's]

---

**4.** In the argument following point VI, Appellant maintains the jury that convicted him was not chosen from a panel representing a fair cross section of the community, in that most of the venire members had served as jurors in past cases where guilty verdicts were returned. This claim of error is unpreserved, as it was not raised in Appellant's motion for new trial. Rule 29.11(d); *State v. Pullen,* 843 S.W.2d 360, 362 (Mo. banc 1992). Additionally, the issue is not raised in point VI (or any other point). An appellate court reviews only issues raised in the "points relied on" in an appellant's brief. *State v. Adams,* 808 S.W.2d 925, 930[3] (Mo.App. 1991); *State v. Richards,* 795 S.W.2d 428, 434[8] (Mo.App.1990); *State v. Mooney,* 714 S.W.2d 216, 218[1] (Mo.App.1986). The "fair cross section" issue is ineligible for review.

statements that there were justifiable reasons other than Mr. Allen's race for striking him as a potential juror in this case. I don't believe that the Prosecutor was motivated in stacking an all white jury in this case by striking Mr. Allen.

Appellant's point VI maintains the trial court erred in overruling Appellant's objection to the Prosecutor's peremptory challenge of venireman Allen and in finding the Prosecutor's explanation satisfied *Batson.* Appellant points out a woman on the venire worked with his mother and knew him by seeing him "coming in and out ... three years or so now." The Prosecutor did not use a peremptory challenge against the woman.

In *State v. Pullen,* 843 S.W.2d 360 (Mo. banc 1992), the Supreme Court of Missouri held:

> In determining whether peremptory challenges have been exercised in a racially discriminatory manner, the prosecutor's explanation is deemed to be race-neutral unless a discriminatory intent is inherent in the explanation. *State v. Parker,* 836 S.W.2d 930, 934 (Mo. banc 1992). If the prosecutor articulates an acceptable reason for the strike, the defendant is required then to show that the state's proffered reasons for the strikes were merely pretextual and that the strikes were racially motivated. *Id.* The chief consideration is the plausibility of the prosecutor's explanations in view of the totality of the facts and circumstances surrounding the case. *Id.* The trial court's determination regarding purposeful discrimination is a finding of fact that will not be overturned on appeal unless clearly erroneous. *State v. Hernandez,* —— U.S. ——, ——, 111 S.Ct. 1859, 1872, 114 L.Ed.2d 395 (1991); *Parker,* 836 S.W.2d at 939 n. 7.

*Pullen,* 843 S.W.2d at 362–63[1–3].

Here, as we have seen, the trial court found the Prosecutor's reasons for peremptorily challenging venireman Allen were justifiable and the challenge was not racially motivated. Venireman Allen had known Appellant's wife, father-in-law, sister-in-law, and brother-in-law fifteen years, whereas the woman member of the venire had known Appellant's mother only three years. Furthermore, venireman Allen lived in the same town as Appellant and, according to the Prosecutor, exhibited some mannerism when he revealed his familiarity with Appellant's in-laws. Finally, the Prosecutor had not peremptorily challenged venireman Allen in other cases where there was no evidence he was familiar with the accused's family.

■ Given these circumstances, we cannot brand as clearly erroneous the trial court's finding that the Prosecutor's peremptory challenge of venireman Allen was not racially motivated. As emphasized in *Pullen, Batson* leaves room for the State to exercise peremptory challenges on the basis of the prosecutor's hunches. 843 S.W.2d at 363–64[7]. Appellant's point VI is denied.

We next consider point III, which avers the trial court committed plain error in giving Instruction 4 (MAI–CR3d 302.04) in that the instruction's definition of "proof beyond a reasonable doubt" allowed the jury to find Appellant guilty on a degree of proof "below that required by the due process clause." Appellant bases his attack on *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990).[5]

The Supreme Court of Missouri has rejected this identical attack on the instruction. *State v. Blankenship,* 830 S.W.2d 1, 13[14] (Mo. banc 1992).[6] Appellant's point III is denied.

---

**5.** In *Estelle v. McGuire,* —— U.S. ——, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), the Supreme Court of the United States disapproved the standard of review for jury instructions set forth in *Cage,* and chose to "reaffirm" a standard that inquires "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Estelle,* —— U.S. at —— n. 4, 112 S.Ct. at 482 n. 4, 116 L.Ed.2d at 399 n. 4. Appellant does not cite *Estelle* in support of his point III.

**6.** One of the cases relied on by *Blankenship* is *State v. Griffin,* 818 S.W.2d 278 (Mo. banc 1991). That opinion has been replaced by *State v. Griffin,* 848 S.W.2d 464 (Mo. banc 1993). The latter opinion reaches the same conclusion as the for-

■ We turn now to point II which, like points I and III, seeks plain error relief. Point II asserts the trial court allowed manifest injustice and a miscarriage of justice by failing to declare a mistrial *sua sponte* when the Prosecutor, during closing argument, (a) improperly defined "reasonable doubt," and (b) utilized "scare tactics."

■ The lawyer who represented Appellant at trial registered no objection when the Prosecutor made the allegedly improper comments. Absent objection and request for relief, a trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention. *State v. Clemmons*, 753 S.W.2d 901, 907–08 (Mo. banc 1988), *cert. denied*, 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). Consequently, an appellate court should rarely grant relief on assertions of plain error as to closing argument. *Id.*, 753 S.W.2d at 907.

As to complaint "(a)," our examination of the transcript reveals the Prosecutor illustrated his argument by hypothesizing three commonplace factual scenarios to the jurors and stating what they could infer from the fictitious facts. Unlike the prosecutors in the cases cited by Appellant, the Prosecutor here did not attempt to define reasonable doubt. He simply read part of Instruction 4 (MAI–CR3d 302.04) to the jury. We hold no manifest injustice or miscarriage of justice resulted from the segment of the Prosecutor's argument referred to in complaint "(a)" of point II.

In the portion of the argument identified in complaint "(b)" of point II, the Prosecutor alluded to the "drug war" in the United States, the efforts of police to catch the culprits "on the battlefields of our streets," and the danger of freeing the guilty.

■ A prosecutor is permitted to argue such propositions as the prevalence of crime in the community, the personal safety of its inhabitants, and the jury's duty to uphold the law as well as inferences from

mer regarding the constitutionality of MAI–CR3d 302.04.

its failure to convict. *State v. Newlon*, 627 S.W.2d 606, 618–19[21] (Mo. banc 1982), *cert. denied*, 459 U.S. 884, 103 S.Ct. 185, 74 L.Ed.2d 149, *reh'g denied*, 459 U.S. 1024, 103 S.Ct. 391, 74 L.Ed.2d 520 (1982); *State v. Olds*, 603 S.W.2d 501, 511[14] (Mo. banc 1980). That was the theme of the prosecutor's speech here. If he overstepped the boundary, an issue we need not decide, the transgression was minimal. There was no manifest injustice or miscarriage of justice.

Appellant relies on *United States v. Solivan*, 937 F.2d 1146, 1148–50 (6th Cir.1991). However, that case is inapposite in that the claim of error there was preserved by timely objection at trial. Furthermore, *Solivan* is not binding on us. *Futrell v. State*, 667 S.W.2d 404, 407[3] (Mo. banc 1984). We are constitutionally bound to follow the last controlling decision of the Supreme Court of Missouri. Mo. Const. art. V, § 2 (1945); *State v. Wilson*, 795 S.W.2d 590, 591[1] (Mo.App.1990). The decisions of the Supreme Court of Missouri cited in the preceding paragraph demonstrate complaint "(b)" of point II warrants no plain error relief.

Appellant's final point in appeal 17242 is point V. It maintains the information "failed to allege all essential elements of the offense" of trafficking drugs in the second degree. To grasp the import of this point, we begin with § 195.223.3, which reads:

> A person commits the crime of trafficking drugs in the second degree if ... he possesses ... more than two grams of a mixture or substance described in subsection 2 of this section which contains cocaine base....
>
> .    .    .    .    .
>
> (2) If the quantity involved is six grams or more the person shall be guilty of a class A felony.

Subsection 3 of § 195.223 (quoted in part above) refers to a mixture or substance described in subsection 2 of § 195.223. Subsection 2 is set forth below in pertinent part.[7]

**7.** Subsection 2 of § 195.223 reads:

The information on which Appellant was tried alleged, in pertinent part:

> ... the defendant knowingly possessed more than six grams of a mixture or substance described in subsection 2 of Section 195.223, RSMo., which contained a cocaine base ...

■ Appellant's theory of error, as we divine it from the argument following point V, is that the information was defective because it charged him with possessing a substance "which contained a cocaine base," while the statute refers to a substance "which contains cocaine base." Said another way, Appellant contends a substance containing "a cocaine base" and a substance containing "cocaine base" are not the same thing. According to Appellant, "A substance containing a cocaine base degrades the meaning of a substance that is in fact cocaine base."

The principal case on which Appellant relies is *State v. Smith*, 825 S.W.2d 388 (Mo.App.1992). There, this Court noted the difference between "cocaine" and "cocaine base"—Congress considers the latter more dangerous to society than the former. *Id.* at 389–91. Those interested in the distinction are invited to study *Smith*.

Seizing upon *Smith*, Appellant insists there is a difference between a mixture or substance described in § 195.223.2 which contains cocaine base and such a mixture or substance which contains a cocaine base. Appellant cites no case recognizing such a distinction.

Appellant concedes he did not challenge the sufficiency of the information in the trial court. In *State v. Parkhurst*, 845 S.W.2d 31, 35[8] (Mo. banc 1992), the Supreme Court of Missouri held that when an accused raises the issue of sufficiency of the information for the first time after verdict, the information will be deemed insufficient only if it is so defective that (1) it does not by any reasonable construction charge the offense of which the accused was convicted or (2) the substantial rights of the accused to prepare a defense and plead former jeopardy in the event of acquittal are prejudiced.

Neither circumstance exists here. The information cited the statute defining the crime, set forth the date and place of the crime, and alleged Appellant knowingly possessed more than six grams of a mixture or substance described in subsection 2 of § 195.223 which contained a cocaine base. In § 195.223, the term "cocaine base" appears in only one subsection—subsection 3. The significance of possessing more than six grams of a mixture or substance containing cocaine base appears in subdivision 2 of subsection 3 of § 195.223, which declares possession of that quantity constitutes a class A felony.

We hold the presence of the article "a" immediately preceding the term "cocaine base" in the information did not render it insufficient to charge the crime of which Appellant was convicted. By any reasonable construction, the information charged the crime defined by, and punishable under, § 195.223.3(2).

Furthermore, it is manifest that Appellant's opportunity to prepare a defense was not impaired. He testified he was unaware the contraband was on his person. The information's characterization of the substance as one containing "a cocaine base" instead of one containing "cocaine base" obviously did not affect Appellant's theory of innocence. Point V is denied.

Judgment and sentence in case 238 affirmed.

### Appeal 18209

■ Point IV, the only one pertinent to this appeal, has two parts, "A" and "B." In part A, Appellant avers the lawyer who represented him at trial ("defense counsel")

---

A person commits the crime of trafficking drugs in the second degree if ... he possesses ... more than one hundred fifty grams of a mixture or substance containing a detectable amount of coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed; cocaine salts and their optical and geometric isomers, and salts of isomers; ecgonine, its derivatives, their salts, isomers, and salts of isomers; or any compound, mixture, or preparation which contains any quantity of any of the foregoing substances. ...

rendered ineffective assistance by failing to move to strike the venire when Ms. Klinkhardt made the remarks quoted in our discussion of point I. Appellant argues that had defense counsel made the motion, there is a substantial likelihood the trial court would have discharged the venire and Appellant would have been tried by a jury chosen from a new and impartial venire.

▆▆▆ To prevail on a claim of ineffective assistance of counsel, a prisoner seeking postconviction relief must show (1) his lawyer failed to exercise the skill and diligence a reasonably competent lawyer would have exercised under similar circumstances, and (2) the prisoner was thereby prejudiced. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987).

The motion court's findings on this issue were:

> The Court ... finds that [defense] counsel did not fail to exercise customary skill and deligence [sic] that a reasonably competent attorney would exercise under similar circumstances and that [Appellant] was not prejudiced by the attorney's failure to move to strike the jury venire.

▆▆▆ Appellate review of the motion court's denial of postconviction relief is limited to a determination of whether the findings and conclusions of that court are clearly erroneous. Rule 29.15(j); *State v. Vinson*, 800 S.W.2d 444, 448 (Mo. banc 1990).

In support of his contention that there is a substantial likelihood the trial court would have discharged the venire had defense counsel so moved, Appellant cites *Reed*, 789 S.W.2d 140 (mentioned in our discussion of point I).

▆▆▆ We find nothing in *Reed* indicating a substantial likelihood the trial court would have done so. *Reed* declares no Missouri case has been found where comments by a potential juror required disqualification of the entire venire. 789 S.W.2d at 142. In *State v. Evans*, 802 S.W.2d 507 (Mo. banc 1991), decided after *Reed*, the Supreme Court of Missouri reviewed the cases on this subject and upheld the trial court's denial of an accused's motion to quash the venire following a prejudicial comment by one of its members. *Id.*, 802 S.W.2d at 514–15. The comment in *Evans* was more damaging to the accused than the remarks of Ms. Klinkhardt in the instant case. We reject Appellant's premise that there is a substantial likelihood the trial court would have discharged the venire had defense counsel moved for such relief. Counsel cannot be branded ineffective for failing to make a futile motion. *Cf. Robinson v. State*, 454 S.W.2d 930, 932[4] (Mo.1970); *Harley v. State*, 641 S.W.2d 880, 882[5] (Mo.App.1982).

The motion court's finding acquitting defense counsel of ineffective assistance in the respect complained of in part A of point IV is not clearly erroneous. Part A of point IV is denied.

▆▆▆ Part B of point IV avers defense counsel rendered ineffective assistance in cases 429, 432 and 474 in that he "misled" Appellant by informing him that if the conviction in case 238 was reversed on appeal, "his guilty pleas could be vacated, since the sentences were run concurrently."

Testifying in the motion court, Appellant recounted:

> [Defense counsel] was trying to get me to take a plea bargain to those remaining four charges ... and he informed me that if I pled guilty to them, being that I was filing for an appeal, if I ... had this case overturned, that those charges wouldn't stand, because they wouldn't have anything to run concurrent with them....
>
> I didn't really want to plead guilty to those charges. He more or less convinced me by telling me that if I got the one I went to trial on overturned, if I got a better sentence or something in an appeal, that those other ones wouldn't have anything to run concurrent.

Defense counsel, called as a witness by Appellant in the motion court, testified:

> I informed [Appellant] that if he pled guilty to the charges [in the] three remaining cases, that they would run concurrent with the charge in which he re-

ceived, the sentence from the jury of twenty-one years, and also informed him that should the jury trial conviction be overturned by the appeal court, he could be remanded back for a new trial or there could be a possibility that it would be dismissed altogether. That if that did happen, that an argument could be made that the pleas of guilty terms had nothing to run concurrent with. Whether that argument would prevail, I doubt it, but the arguments could be made along those issues, otherwise the time for which he was serving on the pleas of guilty could remain. I never did inform [Appellant] that the terms of sentence that he did plead guilty on would fall if the appeal court sent back or dismissed the appeal on which he was tried by a jury. I never did inform him of that.

On this issue, the motion court's findings as to cases 429, 432 and 474 were identical. The motion court found:

[Appellant] alleges that [defense] counsel informed [him] that if his conviction in Case [238] was overturned on direct appeal that his conviction under this case should be overturned as well, in that the sentences were concurrent. [Defense counsel] advised [Appellant] that such an argument could be made but that he doubted if that argument would prevail. The Court finds that in the transcript of the plea of guilty ... [Appellant] was informed ... that if his plea of guilty was accepted he would give up his rights relating to trial, including his right to appeal. [Appellant] acknowledged that he understood same. Further, the Court notes that all of [Appellant's] sentences as a result of pleas were ordered to run concurrently with the sentence already imposed in [case 238] in the amount of twenty-one (21) years. That each of the sentences in cases in which [Appellant] pled guilty were less than the sentence he was already serving. Further, the Court finds that [Appellant] was not prejudiced.

To determine whether Appellant received ineffective assistance of counsel regarding his guilty pleas, we must first see whether defense counsel's advice was correct.

Subject to certain exceptions inapplicable here, under § 558.026.1, RSMo 1986, multiple sentences of imprisonment shall run concurrently unless the court specifies they shall run consecutively. A succinct explanation of the effect of concurrent sentences appears in 24 C.J.S. *Criminal Law* § 1582 (1989):

... concurrent sentences are sentences which operate simultaneously, and each day the convict is given the privilege of serving a part of each sentence. He will become entitled to discharge on completion of the term served under the longest sentence, although he must serve until all his concurrent sentences have terminated.

. . . .

Although running concurrently, the sentences remain separate; but where two or more concurrent sentences are reduced to one sentence, time served under the concurrent sentences will be deemed to have been served pursuant to the sentence that remains.

Where one of several convictions or counts for which concurrent sentences were imposed is reversed, the time served under the sentence for such conviction is legally referable to the concurrent sentences imposed on the other convictions or counts. (Footnotes omitted.)

From the above, it is clear that had Appellant won reversal of his conviction and sentence in case 238, he would nonetheless have had to continue serving the sentences in cases 429, 432 and 474. Because the sentences in those three cases are running concurrently, Appellant receives credit for one day against each sentence every day he is imprisoned, starting November 6, 1990, the date those sentences were imposed.[8]

To the extent defense counsel indicated to Appellant that reversal of the conviction and sentence in case 238 might possibly

---

**8.** Appellant may also be entitled to "jail time" credit against the guilty plea sentences per § 558.031, RSMo Cum.Supp.1990, but we need not decide that.

cancel the sentences in cases 429, 432 and 474, defense counsel gave incorrect advice.

 Where a prisoner pleads guilty and thereafter seeks postconviction relief on the ground of ineffective assistance of counsel, he must show there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 370, 88 L.Ed.2d 203, 210 (1985); *Simons v. State,* 719 S.W.2d 479, 480 (Mo.App.1986).

Here, the motion court's findings (quoted *supra*) do not include a finding on whether Appellant would have rejected the plea agreement and gone to trial in cases 429, 432 and 474 had he been correctly advised that reversal of the conviction and sentence in case 238 would not nullify the bargained-for sentences in cases 429, 432 and 474. That question must be resolved, and as it is a fact question, it must be resolved by the motion court.

The judgment of the motion court is affirmed insofar as it (1) denies postconviction relief in case 238, and (2) denies postconviction relief in cases 429, 432 and 474 on all grounds except the one raised in part B of Appellant's point IV. The judgment of the motion court denying postconviction relief in cases 429, 432 and 474 is reversed as to the ground raised in part B of point IV, but no other ground. The postconviction proceeding is remanded to the motion court for a finding on whether Appellant's decision to plead guilty in cases 429, 432 and 474 was based on defense counsel's advice that there was a possibility that reversal of the conviction and sentence in case 238 could nullify the sentences in cases 429, 432 and 474.

If the motion court finds that issue in favor of Appellant, the motion court shall enter judgment setting aside the convictions and sentences in cases 429, 432 and 474.[9] If the motion court finds that issue adversely to Appellant, the motion court shall enter judgment denying postconvic-

tion relief in cases 429, 432 and 474. Appellant may appeal anew, but such appeal shall be limited to the motion court's findings on the issue to be decided on remand. *Neal v. State,* 703 S.W.2d 570, 572[5] (Mo. App.1986).

PARRISH, C.J., and SHRUM, J., concur.

---

9. We are mindful that inasmuch as we have affirmed the judgment in case 238 and denied postconviction relief as to it, Appellant may decide he wants to retain the benefit of the plea agreement in cases 429, 432 and 474. Nothing in this opinion bars Appellant, on remand, from abandoning his postconviction attack on cases 429, 432 and 474.