**STATE of Missouri, Plaintiff–Respondent,**

v.

**Gary L. WEEKLEY, Defendant–Appellant.**

**No. 24773.**

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 19, 2002.

Emmett D. Queener, Assistant State Public Defender, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Charnette D. Douglass, Assistant Attorney General, Jefferson City, for respondent.

JAMES K. PREWITT, Presiding Judge.

Gary Weekley ("Defendant") was convicted of the class C felony of receiving stolen property, in violation of § 570.080, RSMo Supp.1999. He was sentenced as a prior and persistent offender to fifteen years' imprisonment. With two points relied on, Defendant contends that the trial court abused its discretion by (1) overruling his requests for a mistrial following allegedly prejudicial comments from a ven-

ireperson during voir dire and (2) overruling his motion in limine and objections at trial to evidence regarding the replacement value of the property.

Defendant does not challenge the sufficiency of the evidence to sustain his convictions. Viewed in the light most favorable to the verdict, the evidence shows that on July 30, 2000, Eugene Holloway, one of the owners of a cabin located in Wayne County, Missouri, went to that cabin and found a window broken, the hot water heater gone, and the cabin flooded. Holloway notified other owners of the cabin as well as the Sheriff's Department.

Sometime during October 2000, Defendant went to the home of Vauda and John Lineberry to sell a water heater. Defendant informed the Lineberrys that the water heater, which the Lineberrys purchased from him for $40, was from his old trailer house. The Lineberrys later called the Sheriff's Department to determine if it was stolen. A deputy retrieved the water heater, and Holloway, Robert Coon, Jr., (another cabin owner), and Greg Peters (the gentleman who had originally sold and installed the water heater) later identified it as the one that had been stolen.

On October 30, 2001, Defendant was charged by amended information as a prior and persistent offender with the class C felony of receiving stolen property in violation of § 570.080, RSMo Supp.1999. Following jury trial, he was convicted of the crime charged and sentenced as a prior and persistent offender to fifteen years' imprisonment. This appeal followed. Additional facts are recounted as necessary during the analysis and discussion of Defendant's points on appeal.

■ Defendant's first point is that the trial court abused its discretion in overruling his requests for a mistrial following comments from a venireperson during voir dire that allegedly denied Defendant's rights to due process and a fair trial. Defendant argues that the entire panel was tainted by the remarks, and that they implied he had prior convictions, which Defendant contends the jury could have used as evidence of his guilt in the case at bar.

During voir dire, after the prosecutor asked whether anyone knew or had seen Defendant, the following exchange took place with venireperson John Sanders ("Venireperson").

[Venireperson]: Just around Greenville here. I live in Waynesville but I work up here at Birmingham car lot and I've seen him around Greenville off and on at different times.

[Prosecutor]: Okay and have you ever had the occasion to talk to him?

[Venireperson]: No. That's it, about the only thing I've seen his name in the paper on different occasions.

[Prosecutor]: Okay and that's all?

[Venireperson]: Yes.

[Prosecutor]: With this prior knowledge of [Defendant], do you think you'd be able to set that aside and base your decision in this matter solely on the evidence that's presented here today?

[Venireperson]: Yeah.

[Prosecutor]: You don't have any preconceptions or anything like that?

[Venireperson]: Well about the only thing I've seen his name in the police records.

[Prosecutor]: Okay, but you don't have any preconceptions?

At this point, a bench conference was held at which defense counsel asked for a mistrial. The trial court denied the request and instructed the prosecutor not to pursue the police record. The trial judge then questioned Venireperson.

The Court: Let me ask the question of [Venireperson]. [Venireperson], if

you were selected as a juror to serve in this case, could you set aside what you read in the newspaper, heard on the radio and form your opinion based solely on the evidence you heard from the witness stand here today?

[Venireperson]: I think I can.

The Court: Well we all think sir. I need a little stronger than that.

[Venireperson]: Well in the back of my mind I'd still be thinking you know, I've seen where he's been arrested a couple of times in the paper you know.

The Court: Well that's a newspaper, lots of times the newspaper isn't accurate. This is a court of law, could you set aside any article or anything you read in the newspaper if selected as a juror, and be fair and impartial to both sides?

[Venireperson]: Yes.

The Court: You could? Thank you sir.

Defense counsel again requested a mistrial due to Venireperson's reference to Defendant's prior arrests. The request was overruled and denied. After the jury panel was selected, Defendant renewed his motion for a mistrial. The prosecutor suggested that a curative instruction be read to the jury asking them to "disregard any statements made by other venire panel members if the defense counsel requests or desires that." Defense counsel indicated that he did not think such an instruction would achieve anything.

The trial court noted that, when Venireperson made the comments, the court observed him and the entire panel and was "of the opinon [sic] that what he said had no bearing ... because the rest of the jurors just seemed to ignore him[,] .... they really didn't pay much attention to him." The renewed motion was overruled and denied.

The declaration of a mistrial is a drastic remedy that should be employed only in the most extraordinary circumstances where prejudice to the defendant cannot be removed by any other means. *State v. Kelley*, 83 S.W.3d 36, 42 (Mo.App.2002). The trial court is vested with broad discretion in determining whether a panel should be dismissed because of statements made by an individual venireperson. *State v. Buzzard*, 909 S.W.2d 370, 374 (Mo.App. 1995). A trial court's ruling in this regard will not be disturbed on appeal absent an abuse of discretion. *Id.*

The trial court is in the best position to determine the impact of a venireperson's comments upon other members of the panel. *Kelley*, 83 S.W.3d at 41–42. It must consider whether the venireperson's remarks are so inflammatory and prejudicial that it taints the entire jury panel and thereby deprives the defendant of a fair trial. *Id.* at 42.

Courts have held that a limiting instruction is sufficient to avoid prejudice even where a venireperson's comments relate directly to the defendant's guilt or to the potential sentence. *Buzzard*, 909 S.W.2d at 374. That a defendant sought no relief other than a mistrial cannot aid him. *State v. Carter*, 71 S.W.3d 267, 271 (Mo.App.2002). Where a defendant does not ask for an instruction, we consider the failure to grant a mistrial an abuse of discretion only if the comments were so prejudicial that their effect could not have been removed by direction to the jury. *Id.*

In *Kelley*, a venireperson responded to the prosecutor's questions by indicating he would not be able to set aside any opinion of the defendant and judge the cases solely on the evidence presented on the witness stand. *Kelley*, 83 S.W.3d at 42. The venireperson further stated that he could not be impartial because he knew about the

defendant. *Id.* The appellate court determined it was not an abuse of discretion to deny a mistrial under the circumstances. *Id.* The comments were considered ambiguous with regard to any prior bad acts and the trial court noted the venireperson's tone was impassive. *Id.*

In *State v. Crenshaw,* 852 S.W.2d 181 (Mo.App.1993), a venireperson remarked that she was a bailbondsman and the office for which she worked had previously had the defendant out on bond. *Id.* at 184. She further commented that in the current case before the court, the defendant was not one of her clients, and that having the defendant as a client in previous cases would not prevent her from giving both sides a fair trial. *Id.* In its plain error review, the appellate court stated that the venire panel could infer from the venireperson's comments that the defendant had been accused of other crimes. *Id.* However, the venireperson indicated she could give both sides a fair trial, which showed she did not infer that the defendant was guilty. *Id.* Further, none of her comments suggested that the defendant had ever been adjudicated guilty of any prior crimes. *Id.* The appellate court distinguished the case from *State v. Reed,* 789 S.W.2d 140 (Mo.App.1990), where the venireperson made comments that indicated he felt that the defendant was guilty. *Crenshaw,* 852 S.W.2d at 184.

Here, similar to *Kelley* and *Crenshaw,* Venireperson's comments did not indicate that he felt Defendant was guilty of the crime charged. The remarks may have shown Defendant was arrested for prior crimes, but did not suggest that Defendant had been adjudicated guilty of any other crimes. Further, the trial court noted that the remainder of the panel did not seem negatively impacted by the comments; rather, the panel appeared to ignore Venireperson and his comments. A lack of reaction from the remainder of the panel has been used as a basis to show nonprejudicial effect of a venireperson's comments in other cases. *See Buzzard,* 909 S.W.2d at 374 (None of panel appeared shocked at the venireperson's comments regarding the 120–day rule under which someone convicted of a crime could be released in 120 days.).

The comments by Venireperson were not so inflammatory as to prejudice Defendant and deprive him of a fair trial. Point I is denied.

■ In his second point, Defendant argues that the trial court abused its discretion in overruling his motion in limine and objections at trial to evidence regarding the replacement value of the water heater. On October 30, 2001, Defendant filed a motion in limine asking the trial court to prohibit any evidence relating to the item's replacement value; Defendant filed a motion to file that motion in limine out of time on that same day. At the pre-trial conference, the trial court overruled the motion to file the motion out of time, but took the motion in limine with the case, and noted that the ruling did not prohibit Defendant from making objections during the trial.

At trial, Coon, whom we recall was one of the owners of the cabin, testified that, in his opinion, the value of the water heater at the time it was stolen was $200. The prosecutor then asked how much it cost to replace it. Defense counsel objected to the question and to any testimony regarding replacement cost, and the trial court sustained his objection. Coon further testified that he arrived at his opinion on the fair market value of the water heater by considering what it cost when it was installed and the cost to replace it.

Holloway, another owner of the cabin, was also questioned regarding the value of

the water heater. During his direct examination, the following exchange occurred.

Q. [by the Prosecutor] Alright. Now, as the owner of the hot water heater, do you have any opinion as to the value of the hot water heater?

A. The replacement is $224.00, I think that's the value of it.

[Defense counsel]: Your Honor I object.

The Court: Yes you have.

[Defense counsel]: Asked [sic] that it be stricken your Honor from the record. He asked the value your Honor, not the replacement value.

[Prosecutor]: I asked him what he considered to be the value and he's the owner, he's entitled to give that opinion.

[Defense counsel]: He's entitled to testify to the market value at the time it disappeared, not the replacement value.

[Prosecutor]: I'll dig a little farther.

The Court: Well are you . . .

[Defense counsel]: Your Honor, I ask that that sentence be stricken.

The Court: Well so far [Defense counsel] you haven't given a reason for the objection.

[Defense counsel]: It's not relevant your Honor.

The Court: Now you have.

[Defense counsel]: Thank you.

The Court: Alright the court, I'm going to sustain your objection and let you rephrase your question if you would please.

Q. [by the Prosecutor] Okay. Now when you arrived at a value for this hot water heater, what factors did you consider?

A. Well when we first put the hot water heater in it cost $186.00. It was there less than about a year and a half and the replacement value was $224.00.

When I say replacement value that's what it cost me to go put one in just like I had.

. . . .

Q. Just like brand new, okay, but in any event you don't have a problem with telling this jury that your opinion is substantially more than $150.00 value?

A. Well it's at least what I paid for it in 98 which was $182.00.

Later, Peters (the gentleman from whom the owners originally had purchased the water heater and who also had installed it) testified that he sold the water heater to the owners for $183, but that it was sold as a package with other equipment and "it was at a highly discounted price." Peters estimated that the water heater on its own would be valued in the $160 range. Peters further testified that, having seen the condition of the water heater after it was recovered, it was worth more than $150 at that time.

Charles Raymond Fiske, who testified for the defense, was a plumbing contractor. He estimated that the cost of a new water heater of the same type would be $140 and that the value after two years would be $40. On cross-examination, he testified that he had not viewed the condition of the water heater at issue.

 Admissibility of evidence requires relevance. *State v. Anderson,* 76 S.W.3d 275, 276 (Mo. banc 2002). Evidence must be both logically and legally relevant, where it is logically relevant if it tends to make the existence of a material fact more or less probable, and legally relevant if its probative value outweighs its prejudicial value. *Id.* Thus, logically relevant evidence is excluded if its costs outweigh its benefits. *Id.*

 Trial courts have broad discretion in the admission or exclusion of evidence at trial. *State v. Mathews,* 33

S.W.3d 658, 660 (Mo.App.2000). The trial court is in a superior position to assess the probative value and competency of opinion evidence. *State v. Hubbard,* 759 S.W.2d 387, 391 (Mo.App.1988). Thus, we will not interfere with a trial court's ruling in this regard absent a clear abuse of discretion. *Mathews,* 33 S.W.3d at 660.

A trial court abuses its discretion if a ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicates a lack of careful consideration. *Id.* However, if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *Id.*

Under § 570.080, RSMo Supp.1999, receiving stolen property is a class C felony if the property involved has a value of $150 or more. Section 570.020 provides that the value of stolen property is "the market value of the property at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime[.]"

 An owner's valuation of stolen property is sufficient to submit the issue to the jury. *State v. Petalino,* 890 S.W.2d 679, 683 (Mo.App.1994). The owner need not be experienced in valuation to express an opinion of value. *State v. Green,* 812 S.W.2d 779, 788 (Mo.App.1991). Lay opinion testimony has been found to aid the jury and testifying to the value of one's own property is one of the areas in which lay opinion testimony is generally allowed. *State v. Gardner,* 955 S.W.2d 819, 823 (Mo. App.1997).

Defendant directs our attention to two cases where the appellate court determined that the defendant's conviction must be reversed because the State had not met its burden of showing that the value of the stolen property was at least $150. *State v. Jones,* 843 S.W.2d 407, 408–09 (Mo.App. 1992); *State v. Foster,* 762 S.W.2d 51, 54–55 (Mo.App.1988). In both cases, the State had only offered evidence of the replacement value of the stolen property, even though there was no evidence that the fair market value at the time and place of the crime was unascertainable. *Jones,* 843 S.W.2d at 408; *Foster,* 762 S.W.2d at 54.

In *Foster,* the appellate court noted that the rule that an owner can testify to his opinion of the value of the property at the time and place of the crime was of no aid to the State. *Foster,* 762 S.W.2d at 54. This was because the evidence had not been offered in the form of an opinion by the owner. *Id.* Therefore, in *Foster,* there was no testimony offered regarding the owner's opinion of the value of the stolen items, which, as stated above, is sufficient to submit the issue to the jury. *Id.; Petalino,* 890 S.W.2d at 683.

Here, the situation is different in two ways. First, two owners testified that, in their opinion, the value of the water heater was more than $150. Second, replacement cost was not the only evidence presented by the State. The jury heard testimony that the value of the water heater at the time and place of the crime ranged anywhere from a low of $40 to a high of $224.

The trial court did not abuse its discretion. Point II is denied.

The judgment is affirmed.

RAHMEYER, C.J., and PARRISH, J., concur.