TEBBETTS *v.* TUNE.

Opinion delivered June 11, 1928.

*Morris & Barron,* for appellant.

*R. E. Wiley,* for appellee.

MEHAFFY, J.  Louise E. Tebbetts, the appellant, brought suit in the Pulaski Circuit Court against Howard A. Tune and Fred J. Reutelhuber, representing the members of the widows' and orphans' fund, alleging that the fund had insured the life of Tebbetts in the sum of $1,000 and that the members thereof had jointly and severally bound themselves to appellant, as beneficiary of Tebbetts, for the payment of such sum.

This suit was based on the membership of George S. Tebbetts in the widows' and orphans' fund, the plaintiff alleging that Tebbetts was a member of the fund, and that he had died.  Notice of proof and loss and payment of all accrued assessments were alleged.  It was also alleged that demand for payment had been made, and that appellee denied liability.

The appellee filed answer, together with a motion to transfer to equity; denied the allegations of the complaint; alleged that Reutelhuber and Tune were trustees of the money raised by voluntary contributions of members; that the imperial council governs the shrine and the members thereof, and that, under the by-laws of the council, a member who was suspended in a consistory was automatically suspended in his temple, said by-law being made part of the appellee's answer.

Appellees further stated that Tebbetts became suspended in the Arkansas Consistory No. 1 because of non-payment of dues thereto, and on December 31, 1925, by virtue of being suspended from the consistory, became suspended in the shrine, remaining delinquent therein

until the time of his death, which was in July, 1926. It was further alleged that being suspended from the shrine tainted his membership in the fund, and that he thereby became suspended in the fund from and after December 30, 1925.

The case was transferred to equity, and the chancellor, on January 13, 1928, rendered a decree dismissing the complaint for want of equity, and appellant prosecutes this appeal to reverse said decree.

The facts are substantially as follows: No one can become a member of the Shrine Temple unless he is either a member in good standing either in a commandery of the Order of Knights Templar, or a consistory of the Ancient and Accepted Scottish Rite. Tebbetts was a Scottish Rite Mason, and therefore eligible to membership in the shrine. Under the laws of the organization, any one suspended or expelled from the Scottish Rite body stands suspended or expelled in the Shrine Temple.

On the 31st day of December, 1925, Tebbetts was suspended from the Scottish Rite body, and thereby became suspended in the Shrine Temple. The widows' and orphans' fund was composed of members of the temple. As a member of the temple, in good standing and in good health, Tebbetts was entitled to subscribe to the widows' and orhans' fund, and the application signed by him, addressed to the widows' and orphans' fund, states that he is a member in good standing of Al Amin Temple, and in general good health. The by-laws provide that, in order to be eligible to membership in the widows' and orphans' fund, one must be a member of the temple in good standing, and in general good health.

Section one of the by-laws of the fund is as follows: "All members of Al Amin Temple in general good health and in good standing are eligible to membership in the fund, on the conditions herein named."

The agreed statement of facts covers several pages of the transcript, and is too lengthy to be set out in full. But it is agreed that Tebbetts was a member of the fund,

and that the appellant is his widow and beneficiary; that on December 31, 1925, Tebbetts was delinquent in his dues to the Arkansas Consistory No. 1, and suspended in accordance with its by-laws; that he had received notice that he was suspended on account of nonpayment of dues amounting to $18; that he was suspended from the consistory, and that such suspension automatically suspended him from the shrine. The suspension continued until his death. He was never reinstated in the consistory, and did not pay his dues in Al Amin Temple for 1926. That he died from an injury received in an accident on July 18, 1926. That the widows' and orphans' fund was notified of his death, and payment demanded. The widows' and orphans' fund, through its officers, refused to recognize the validity of the claim. That, at the time of his death, he had on deposit with Fred J. Reutelhuber, secretary of the widows' and orphans' fund, the sum of $8.80, the balance of the amount deposited with the secretary by Tebbetts, with the direction that it be drawn on from time to time in paying regular assessments or death contributions; that the constitution of the imperial council provided that a noble can hold active membership in but one temple, and, to retain membership in a temple, he must be in good standing in one or the other prerequisite Masonic bodies; that, in case he holds membership in but one and is suspended or expelled, he stands suspended or expelled in the temple until restored to good standing by the prerequisite body suspending or expelling him.

It is further agreed that membership in the widows' and orphans' fund is confined to members of Al Amin Temple. Before one can join the fund he must be in good standing in Al Amin Temple, and in general good health. The by-laws of the widows' and orphans' fund, together with the certificate, are made a part of the agreed statement of facts. It is not compulsory on members of the temple to become members of the widows' and orphans' fund. Some of the members of Al Amin Temple are not members of the widows' and

orphans' fund. Tebbetts did not pay his death contributions in the usual way. He would mail his check for $15 or $20 to Reutelhuber, secretary, who would cash same and deduct amount of current assessment, and deposit the balance to the credit of Tebbetts in the widows' and orphans' fund. When another assessment became due to the widows' and orphans' fund, the secretary would draw from that account. When there was not enough money, he would notify Tebbetts, and Tebbets would again send him a check for $15 or $25. After Tebbetts had been suspended from the consistory and the temple, on December 31, 1925, he had to his account in the widows' and orphans' fund department $8.80, being a balance of $22 previously deposited. This sum was not refunded, but was retained in the account of Tebbetts in the widows' and orphans' fund, and the name of Tebbetts was carried on the books of the widows' and orphans' fund. The secretary, Reutelhuber, did not return the $8.80 because he thought Tebbetts would reinstate himself in good standing in the temple, which he could do by paying his delinquent dues. Between the date of Tebbetts' suspension and the date of his death there occurred eight deaths of the members of the widows' and orphans' fund, and several assessments were collected from the membership, but Tebbetts was not called on to pay any of them. On July 29 the secretary of the widows' and orphans' fund sent a check for $8.80 to appellant, which she has not cashed or returned.

The agreement further states about the organization of the temple and the widows' and orphans' fund, but we deem it unnecessary to copy that in this statement.

It is also agreed that the constitution and by-laws of the national body show that the imperial potentate is the executive officer, and that he has authority to suspend, until the next session of the imperial council, any officer of any temple for certain things. It is also provided in the constitution that no applications shall be received unless the applicant is a regular Knight Templar in good

standing in the commandery, or a regular 32 degree Mason in good standing in a consistory of the Ancient Accepted Scottish Rite. It is also provided in the by-laws that no appeal from the decision of the illustrious potentate shall lie to the temple, but an appeal may be taken to the imperial potentate, whose decision shall stand until the same shall be revoked or approved by the imperial council.

Parties also make the by-laws of Al Amin Temple a part of their agreement. Article nine of the by-laws of the temple provides that all questions, other than those provided for the edicts and regulations of the imperial council, shall be decided by a vote of those present at any regular meeting of the council.

The agreed statement of facts further shows the organization of the widows' and orphans' fund. And the minutes of the meeting of the temple, among other things, contains the statement: "All members of Al Amin Temple A. A. O. N. M. S. in good standing and in good general health are eligible and may become members of the order."

It is further provided in the by-laws that assessments shall be made and that the amount due beneficiaries shall be paid upon satisfactory evidence, etc., and provides for the application to become members of the fund.

The agreed statement of facts is quite lengthy, as also is the testimony, but the above is a substantial statement of the material facts.

Appellant's first contention is that the agreement between the widows' and orphans' fund and Tebbetts rests upon the basis of a contract, and stamps it as an ordinary insurance policy, and calls attention to many authorities, but we deem it unnecessary to discuss the authorities at length. The authorities as to what constitutes an insurance contract are in hopeless conflict, but it is immaterial whether we call this an insurance contract or simply call it a contract, because the only question necessary to be considered and which is decisive of this case is the question whether the subscriber to

the widows' and orphans' fund must remain in good standing in the temple, or whether being suspended or expelled from the temple disentitles the member to the privileges and benefits of the widows' and orphans' fund while so suspended or expelled. If a suspension for nonpayment of dues in the Scottish Rite body, which operates as a suspension in the temple, does not suspend him as a member of the fund, then appellant is entitled to recover. If, on the other hand, he must remain in good standing in the temple to be entitled to the privileges and benefits of the widows' and orphans' fund, appellant is not entitled to recover. It is expressly provided in the by-laws that, in order to become a member of the widows' and orphans' fund, one must be a member of the temple in good standing.

The Massachusetts court, in deciding the case of *Burbank* v. *Boston Police Relief Association,* where there was a change of beneficiary, and the instrument designating the change was under seal, attested by two witnesses and the treasurer of the corporation, the court said:

"It is to be assumed that this was done at a meeting of the directors. But it does not appear that any action was taken by the directors upon it. There is no ground for the contention that the defendant is bound by these acts of its officers or is estopped to deny that Morey was a member. Neither the treasurer nor the directors had authority to continue Morey a member. The by-laws declared that he was not a member, and the corporation itself could not vote to give him the rights of a member." *Burbank* v. *Boston Police Relief Assn.,* 144 Mass. 434, 11 N. E. 691.

"This is a corporation which does not make contracts of life insurance with strangers, but arranges a system of payments for the benefit of the relatives of its deceased members. It adopts by-laws to determine the relations of members to one another and also their rights against the corporation. The principles which apply to ordinary mutual insurance companies in regard to the waiver of

by-laws by officers are equally applicable to this corporation. * * * It is well settled that the officers of a mutual insurance company have no authority to waive its by-laws which relate to the substance of the contract between an individual and his associates in their corporate capacity. * * * The officers of the defendant were agents with a limited authority. The corporation, by the law which it laid down for the government, received into association with its members and to participate in its benefits all persons of a particular class. John O. McCoy did not belong to that class, and he could not become a member of the corporation without appropriate action by the corporation itself.'' *McCoy* v. *Roman Catholic Mutual Insurance Co.*, 152 Mass. 272, 25 N. E. 289.

The widows' and orphans' fund, by its by-laws, received into its membership only persons of a particular class. That class was members of the temple in good standing. Membership in the temple in good standing is a prerequisite to membership in the widows' and orphans' fund. And only persons who are members in good standing, both in the temple and in the consistory, can become members of the widows' and orphans' fund. Counsel for appellant, however, insist that, while membership in good standing is a prerequisite to becoming a member, there is nothing in the by-laws that requires one to remain in good standing in the temple in order to retain his membership in the widows' and orphans' fund, and that this is a contract which is binding on both parties.

The cardinal rule in the interpretation of contracts is to ascertain the meaning and intent of the parties and give effect to that intent if it can be done consistently with legal principles. And it is the duty of one construing a contract to ascertain the meaning and intent of the parties, and, if it can be done, to find out this intent as expressed by the language used by the parties. It was evidently the intention of the parties that beneficiaries in the widows' and orphans' fund should be confined to

those persons who are members of the temple in good standing. It is true there is nothing in the by-laws or the application that states in so many words that a member must remain in good standing in the temple. It is also true that there is nothing in the by-laws or application that states that he must remain a member of the temple. If Tebbetts had been expelled instead of suspended, the argument that the law did not require him to remain a member, but only required him to be a member when he joined, would be as applicable and as plausible as the argument that he is not required to remain in good standing. Tebbetts could have been reinstated by paying his dues; not by paying his dues or assessments to the fund, but by paying his dues to the consistory. The situation is very different from that of a person owing dues to a lodge and the lodge having money on hand sufficient to pay said dues. It has been many times held that, under such circumstances, the lodge cannot forfeit the rights of the party while it has money in its possession that it could apply to the payment of his dues. But, in the instant case, the widows' and orphans' fund could not have applied the money that it had on hand to the payment of Mr. Tebbetts' dues in the consistory. It had no authority to do this. Moreover, there was not sufficient funds to pay his dues.

The agreed statement of facts in this case is that the suspension of Tebbetts continued until his death; that he was never reinstated in the Arkansas Consistory, and did not pay his dues to the temple for 1926 which became due and payable January 1 of that year.

If appellant's contention was correct, a member could be expelled from the consistory and the temple and still be a member of the widows' and orphans, fund, although this fund is organized for the benefit of persons who are members of these orders in good standing.

Section one of the by-laws of the fund provides that all members of Al Amin Temple in general good health and in good standing are eligible to membership in the fund.

Section ten of the by-laws provides that they may be changed or amended at any lawful meeting of the temple. But it also provides that, at the request of any member of the fund present, the voting may be confined to the members of the fund. Therefore, if a person could remain a member of the fund after having been expelled from the temple, he could still vote on the by-laws of the fund and could, by his own request, prohibit any member of the temple, other than members of the fund, from voting. Any member of the fund can, by keeping his dues paid in the consistory and temple, remain a member; or, if he has been suspended, can be reinstated by the payment of his dues.

Appellant says that the fund is self-governing in its own sphere, for, according to its by-laws, it makes its own rules and regulations exclusively through its own membership. And we think that this strengthens the position that the member must remain in good standing in the consistory and temple. If the fund is self-governing and makes its own by-laws, then it is conceivable that the persons expelled from the consistory and the temple could make the laws of the fund, if appellant's contention is correct.

Our conclusion is that the suspension of a member by the consistory suspends him from the fund, and that the only way he can be reinstated is to pay his dues in the consistory.

The decree of the court is affirmed.