**STATE of Missouri, Respondent,**

v.

**Harold S. RELEFORD, Appellant.**

**No. WD 39734.**

Missouri Court of Appeals, Western District.

April 5, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 31, 1988.

Application to Transfer Denied July 26, 1988.

Sean D. O'Brien, Public Defender, Alice E. Eakin, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Scott L. Templeton, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and MANFORD and NUGENT, JJ.

NUGENT, Judge.

Defendant Harold S. Releford appeals his conviction after a jury trial of one count of robbery in the first degree in violation of § 569.020, R.S.Mo., 1986, two counts of assault in the first degree in violation of § 558.011.1(2), R.S.Mo., 1986, and four counts of armed criminal action in violation of § 571.015.1, R.S.Mo., 1986, and his sentence to consecutive terms of punishment totaling 155 years.

We affirm.

On the evening of December 6, 1986, Harry Don Callicotte (H.D.) was studying for his law school final examinations at the University of Missouri–Kansas City Law School. He testified that he left the school about 1:00 a.m. and drove home. He parked his car in front of his home, gathered his books and walked to the door. As he unlocked the door, he saw a "flash" out of the corner of his eye and felt a "thud" on the back of his head. Mr. Callicotte fell into the entrance foyer.

Mr. Callicotte's mother, Grace Kopoian, and her friend, Jerry Mee, were sitting in the living room watching television and playing backgammon. They heard H.D. cry out and saw him fall into the house. Immediately afterward his attacker jumped into the room with a baseball bat in his hands and again struck H.D.

Ms. Kopoian and Mr. Mee went to her son's aid, but the intruder first struck Mr. Mee and then struck Ms. Kopoian. She then managed to escape and run for help.

Mr. Callicotte crawled across the room, got a pillow from the sofa and used it to shield his head. At that time he was able to turn and see his assailant for the first time. After being struck again, Mr. Callicotte managed to get to his feet and, using his body, push his attacker across the room and against a wall. As he did so, he looked directly into his attacker's face.

The assailant struck Mr. Callicotte several more times until finally he was unable to get up, although he remained conscious during the entire attack. He saw the assailant strike Jerry Mee three more times, even though Mr. Mee could not move. The attacker then walked back to Mr. Callicotte, rolled him over, removed his wallet and struck him again before leaving the house.

At trial Ms. Jacqueline Cook testified that she heard Ms. Kopoian screaming for help and ran outside. She saw a man leaving Mr. Callicotte's house and asked him what was wrong. He replied that someone had been shot. She saw the man go to a car parked about half a block away and drive off.

Ms. Cook went to Mr. Callicotte's house, and she and her husband administered first aid to the two men until paramedics and police arrived. Other neighbors and family members also gathered.

Mr. Callicotte was able to give the police a description of his assailant. He described him as a black male, approximately 5'8" weighing 200 pounds, with large arms and legs, large lips, and flared nostrils. Ms. Cook gave police a description of the man she saw leaving and the car he was driving. Ms. Kopoian also described the man.

The next morning in the hospital Mr. Callicotte gave police the same description and picked Harold S. Releford's picture from a photographic display of six. Ms. Kopoian also picked Mr. Releford's picture from the display.

A day or so later detectives brought a video display to the hospital for Ms. Kopoian and Mr. Callicotte to view. Again, both identified the defendant, Harold S. Releford, as their assailant.

Defendant argues four points on appeal: First, the trial court erred in admitting into evidence the in-court and out-of-court identifications by H.D. Callicotte and Grace Kopoian because the photo array presented

to them was impermissibly suggestive. Second, the trial court erred in failing to strike the jury panel when one of the members of the venire answered affirmatively when the prosecutor asked if anyone recognized the defendant because the member was a chaplain at the Jackson County Jail and by his answer betrayed the fact that the defendant was incarcerated. Third, the trial court erred in giving MAI–CR 300.02 and 302.04 because those instructions improperly define reasonable doubt. Finally, the trial court erred in admitting into evidence exhibits 30 and 39, photographs of Jerry Mee, which were unnecessary and only served to inflame the prejudices of the jury.

On appeal we review the evidence in the light most favorable to the state and disregard any evidence to the contrary. *State v. Wood,* 596 S.W.2d 394, 400 (Mo.1980) (en banc). The defendant does not challenge the sufficiency of the evidence to support the convictions.

In his first point defendant argues that the victims' in-court and out-of-court identifications should not have been admitted into evidence because the photo display was impermissibly suggestive. Defendant contends that his photo was the only one in the display that comported with the descriptions given because the other photos were of men with distinct facial hair, long hair or slight body build.

In determining the admissibility of identification testimony, reliability rather than suggestiveness is the linchpin securing defendant's due process rights. *State v. Robinson,* 641 S.W.2d 423, 427 (Mo.1982) (en banc). The court must examine the totality of the circumstances, including (1) the opportunity of the witness to view the criminal at the time the crime is committed, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated at the time of confrontation, and (5) the length of time between the crime and confrontation. *State v. Harper,* 713 S.W.2d 7, 10 (Mo.App.1986).

In the present case the trial court determined that the pretrial identification was not unduly suggestive. Our review is limited to a determination of whether sufficient evidence exists for the trial court's decision. *Id.* at 10. Identical appearances among the participants of a display is not required. *State v. Cooper,* 708 S.W.2d 299, 305 (Mo.App.1986). We have examined the challenged array and do not find it to be impermissibly suggestive. Contrary to defendant's contention, one man has almost no facial hair and defendant's picture shows about the same amount of facial hair as three of the other men. Defendant's hair appears shorter than that of the other men in the photo display, but Mr. Callicotte testified that he believed defendant to be wearing some type of hat, so that the assailant's hair did not provide a basis for his identification. Two of the other men in the display appear to be less stocky than defendant, but the other three do not.

The witnesses viewed the assailant for several minutes; Mr. Callicotte never lost consciousness and looked directly into his assailant's face as he pushed him across the room and watched his assailant as he struck Mr. Mee. His entire attention was focused on the assailant, and both Ms. Kopoian and Mr. Callicotte gave the police a description of their attacker before they saw the photo display. Both were absolutely certain of their identification when they saw defendant's picture—even to pointing out to the police that, because of the background lighting in the photo, defendant appeared lighter in skin color than he actually was. Both witnesses picked defendant's picture out within hours of the attack, and both witnesses immediately picked out the defendant. Ample evidence supports the trial court's finding.

Defendant contends in his second point that the court erred in failing to strike the jury panel when the prosecutor asked if anyone knew Mr. Releford and Mr. Brown replied that he was a chaplain at the Jackson County Jail and that he knew Mr. Releford. The defense argues that the chaplain betrayed the fact that the defendant was incarcerated and that his comment removed the presumption of innocence in violation of

the Fourteenth Amendment's Due Process Clause.

██ When trial counsel claims that the impartiality of the panel has been tainted by comments made during voir dire, counsel has the burden to show prejudice to his or her client. *State v. Greathouse*, 694 S.W.2d 903, 909 (Mo.App.1985). The trial court is vested with broad discretion in determining whether a jury panel should be dismissed, and its ruling will not be disturbed on appeal unless the trial court abused its discretion. *State v. Mentola*, 691 S.W.2d 420, 422 (Mo.App.1985).

██ During voir dire the prosecutor asked whether any member of the jury panel recognized Harold Releford. One member raised his hand and the following exchange occurred:

And again—excuse me, sir. Yes, sir. That's—is it Rev. Brown?

Venireman Brown: That's correct.

Mr. Komoroski: Yes, sir.

Venireman Brown: I am one of the chaplains at the Jackson County Jail.

Mr. Komoroski: So you, in fact, know Mr. Releford?

Venireman Brown: Not personally.

Mr. Komoroski: Thank you very much, Rev. Brown.

Reverend Brown's statement never indicated that he recognized the defendant from the Jackson County Jail. Although that might be inferred from his statement, the jurors had to know that Mr. Releford was incarcerated since three armed guards were posted in the courtroom during the trial. Trial courts have discretion even to allow the use of shackles on a defendant. *See State v. Guinan*, 732 S.W.2d 174, 177 (Mo.1987) (en banc). (Reverend Brown was later stricken for cause.) No abuse of discretion occurred.

██ Defendant next argues that the trial court erred in submitting MAI–CR3d 300.-02 and 302.04 because such instructions improperly define proof beyond reasonable doubt as proof that leaves a juror "firmly convinced" of defendant's guilt. MAI–CR3d 300.02 states in part:

A reasonable doubt is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. The law does not require proof that overcomes every possible doubt. If, after your consideration of all the evidence, you are firmly convinced that (a) (the) defendant is guilty of the crime charged, you will find him guilty. If you are not so convinced, you must give him the benefit of the doubt and find him not guilty.

The Missouri Supreme Court addressed this issue in *State v. Guinan, supra*, at 177, and held that the definition of a reasonable doubt as "a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case" properly instructed the jury. Here, the instruction is the same. The instruction, taken as a whole, properly instructs the jury.

In his last point, defendant contends that the trial court erred in admitting into evidence state's exhibits 30 and 39, photographs of Jerry Mee, because their probative value was outweighed by their prejudicial impact. Defendant claims that the photographs were inflammatory because they depicted "tubes and medical devices protruding from his body" and that those exhibits were unnecessary to prove the type and extent of injury.

██ The trial court has broad discretion in determining the admissibility of photographs. *State v. Nolan*, 717 S.W.2d 573, 577 (Mo.App.1986). Even gruesome photographs may be admitted to show the jury what wounds were inflicted and what the effect of those wounds was. *State v. Weatherspoon*, 716 S.W.2d 379, 383 (Mo. App.1986). The fact that a witness has described the matters depicted in the photographs is not a valid objection. *State v. Wood, supra*, at 403.

██ In the present case two photographs of Jerry Mee were admitted into evidence. They were offered for the purpose of showing the nature, extent and

location of the wounds inflicted. A baseball bat was used in this attack; the victim suffered severe head injuries resulting in coma, brain damage and paralysis. The photos show two tubes extending from the victim's nose. Considering the victim's injuries, the photos are surprisingly non-inflammatory. The trial court did not abuse its discretion.

We affirm the judgment of the trial court.

All concur.