Norman Shane GLASGOW, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 65948.

Missouri Court of Appeals,
Western District.

Jan. 23, 2007.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 27, 2007.

Application for Transfer Denied
May 1, 2007.

S. Kathleen Webber, Assistant Appellate Defender, Kansas City, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stephanie Morrell, Assistant Attorney General, Jefferson City, MO, for respondent.

Before HOWARD, C.J., and SMITH and NEWTON, JJ.

VICTOR C. HOWARD, Chief Judge.

Norman Shane Glasgow appeals from the circuit court's denial of his Supreme Court Rule 29.15 motion.[1] He was previously found guilty of attempted manufacture of a controlled substance under section 195.211 and sentenced to fifteen years imprisonment.[2] On direct appeal, this court denied relief. 144 S.W.3d 354 (Mo. App. W.D.2004). In this appeal, he argues the State failed to disclose a plea agreement made with a key witness and his right to effective assistance of counsel was violated when his attorney failed to investigate that plea offer and failed to raise complaints concerning a venireperson's prejudicial comment in his motion for a new trial.

1. All citations to rules refer to Missouri Supreme Court Rules (2006).

2. All citations to statutes refer to RSMo (2000).

## Background

In the fall of 2001, the North Missouri Drug Task Force was investigating Glasgow and his friend Tawnya Jones. An undercover officer arranged to deliver an ingredient used in the manufacture of methamphetamine, anhydrous ammonia, to Jones's friend, Ginger Billups, who would then deliver it to Glasgow and Jones. Earlier that year, Ginger Billups had been arrested and agreed to serve as a confidential informant.

As planned, an undercover officer delivered the anhydrous ammonia to Ginger Billups's home. Shortly after the officer left, Glasgow and another individual arrived in Glasgow's Jeep. They then began loading the ammonia into the Jeep. When Glasgow, Jones, and the third individual left Billups's home in the Jeep, police attempted to follow; however, they soon lost the three. The police later located the Jeep and witnessed someone carry something away from the vehicle. After the Jeep drove on, the police found the anhydrous ammonia delivered to Ginger Billups in a culvert next to the road.

Meanwhile, another police officer stopped the vehicle, driven by Glasgow, for a traffic violation. The police officer that had found the ammonia in the culvert contacted the police officer stopping the Jeep and told him to arrest Glasgow, Tawnya Jones, and the other individual in the car. He did so, and the arresting officer then searched the car. He found a plastic pitcher, two wooden spoons, a propane torch, a butane igniter, a black cylindrical tube containing a white powdery substance (later determined to be ephedrine and pseudoephedrine), stripped lithium batteries, and pliers.[3] The items found by police

were consistent with items known to be used in the production of methamphetamine.

During the voir dire and in the presence of the entire panel, Venireperson Singleton answered one of the State's questions in a manner Glasgow claims was prejudicial. The State asked if any of the prospective jury members knew about the Glasgow case through the media. Singleton replied:

> I know Norman [Glasgow] just a little bit, but my ex son-in-law, he was on pills allot [sic] and in the pen right now and I heard Norman [Glasgow]'s name too much. I think if I sat on a jury I could be convinced otherwise, but I've really got an opinion on it.

Trial counsel then requested a mistrial due to the prejudicial nature of Singleton's statements. The objection was overruled and Singleton did not serve on the jury.[4] However, the motion for a mistrial due to this statement was not renewed in a motion for a new trial.

Glasgow's primary defense at trial was that he did not know the substance unloaded from his Jeep was anhydrous ammonia and that he did not intend to manufacture methamphetamine. Glasgow told police that the three had disposed of the ammonia because it smelled bad and claimed not to know what it was. Tawnya Jones later corroborated this statement at trial, testifying that Glasgow did not know that anhydrous ammonia was in the car and had never manufactured drugs with her in the past.

At trial, Ginger Billups also testified. She contradicted Tawnya Jones, stating that after Glasgow arrived at her house,

---

3. The police also found marijuana and rolling papers. Glasgow admitted ownership of these items.

4. Glasgow did not request nor did the court provide on its own accord a curative instruction.

they had discussed delivery to Billups of an "eight ball" or one-eighth of an ounce of methamphetamine in exchange for the anhydrous ammonia. She also testified that Glasgow told Tawnya Jones to retrieve trash bags from Ginger Billups because the ammonia was leaking.

Glasgow's Rule 29.15 motion alleges that the State failed to disclose that Ginger Billups received a favorable plea agreement because of her cooperation in its prosecution of Glasgow. Glasgow notes that Billups had previously been charged with two class A felonies, which were reduced to class B felonies, the State made a plea offer that she would only serve 10 years with a 120–day call-back, and the State voluntarily dismissed its motion to revoke her probation for a prior offense.

At trial, Glasgow's defense counsel produced evidence that Billups became a confidential drug informant after she had been arrested earlier in 2001. His trial counsel questioned her concerning a possible deal and her motive to lie:

Q: Have these last two Class B felonies of drug sales case, has that been concluded yet?

A: No.

Q: And so you're still awaiting final outcome of that case?

A: Yes.

Q: And part of your outcome on that case depends on what happens in this case?

A: Well, I have to cooperate and testify, but there is no set deal.

Q: You don't think you have a deal with the [S]tate?

A: No, I have no deal as of yet.

Q: And you're hoping for leniency from the State, aren't you?

A: I hope.

Q: And that is part of this trade off being a confidential drug informant[?]

A: Yes, I would like to be out with my children before they have grandchildren.

. . . .

Q: And were you advised by the State that you would get favorable treatment by the State in exchange for your testimony against Norman Glasgow, weren't you?

A: I was told they would look at how I testified and how I helped them and they would go from there. They didn't use the word favorability.

The jury learned that Ginger Billups was not an entirely neutral witness and had significant motive to implicate Glasgow. While she testified there was no set deal, she did testify she had an expectation of favorable treatment for her testimony against Glasgow.

## Standard of Review

"Appellate review of the trial court's action on the motion filed under this Rule 29.15 shall be limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 29.15(k). Clearly erroneous findings and conclusions leave this court, after a review of the entire record, with a definite and firm impression that a mistake has been made. *Weeks v. State,* 140 S.W.3d 39, 44 (Mo. banc 2004).

## Ineffective Assistance of Counsel

A movant will only establish ineffective assistance of counsel where he proves that the performance of his counsel did not conform to the degree of skill, care, and diligence of a reasonably competent attorney and that movant was prejudiced by his counsel's poor performance. *State v. Hall,* 982 S.W.2d 675, 680 (Mo. banc 1998). Glasgow argues he was denied effective assistance in two manners: first, when his attorney failed to renew his objection to

Venireperson Singleton's comments in his motion for a new trial, and, second, when he failed to adequately investigate and expose a crucial witness's motive to lie.

### Venireperson's Remarks

■ Glasgow claims that the failure to include an allegation of error concerning Venireperson Singleton's remarks in his motion for new trial prejudiced his rights in two manners: had the issue been raised in a motion for new trial, the trial court would have granted that motion, and, secondly, had the issue been raised in a motion for a new trial and the trial court denied relief, then this court would have found on direct appeal that the trial court abused its discretion.

We first analyze Glasgow's point that he was denied effective assistance of counsel when his attorney failed to renew his objection to the venireperson's comments in a motion for new trial because had the objection been renewed, the trial court would have granted a new trial. He continues to argue that a reasonably competent attorney would have preserved the error and that he suffered prejudice.[5]

■ However, Glasgow does not meet his burden under the prejudice prong of *Strickland.*[6] The trial court has broad discretion in determining if a jury panel

should be dismissed. *State v. Evans,* 802 S.W.2d 507, 514 (Mo. banc 1991). A new trial will be appropriate only where a venireperson's responses were so inflammatory and prejudicial that the right to a fair trial has been infringed. *Id.* When the defendant claims that the impartiality of the panel is tainted by comments offered during voir dire, the defendant has the burden to show prejudice. *State v. Greathouse,* 694 S.W.2d 903, 909 (Mo.App. S.D. 1985). Generally, the disqualification of an individual juror for the expression of an opinion, or for making remarks indicating bias, is not a sufficient ground for the challenge of the entire panel. *State v. Weidlich,* 269 S.W.2d 69, 71 (Mo.1954).

Venireperson Singleton's comments in the current case are of a type greatly less prejudicial than would be required to compel a new trial. The venireperson stated:

> I know Norman [Glasgow] just a little bit, but my ex son-in-law, he was on pills allot [sic] and in the pen right now and I heard Norman [Glasgow]'s name too much. I think if I sat on a jury I could be convinced otherwise, but I've really got an opinion on it.

The attorney then continued "So, do you do or do not believe that you can serve as a fair and impartial juror in this matter."

---

5. Glasgow argues that we should employ the factors listed in *State v. Goff,* 129 S.W.3d 857, 866 n. 7 (Mo. banc 2004), to determine the prejudicial effect of the uninvited statements of Venireperson Singleton. *Goff,* however, is inapplicable. The factors described there are:

> 1) Whether the statement was, in fact, voluntary and unresponsive to the prosecutor's questioning or caused by the prosecutor; 2) whether the statement was singular and isolated, and whether it was emphasized or magnified by the prosecution; 3) whether the remarks were vague and indefinite, or whether they made specific reference to crimes committed by the accused; 4) whether the court promptly sustained de-

fense counsel's objection to the statement, and instructed the jury to disregard the volunteered statement; and 5) whether, in view of the other evidence presented and the strength of the State's case, it appeared that the comment played a decisive role in the determination of guilt.

*Id.* The *Goff* factors only speak to the prejudicial effect of uninvited statements of prior criminal conduct. The statement here cannot fairly be construed as a statement of prior criminality, but only knowledge of Glasgow through a criminal.

6. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Singleton replied, "Yes, I do." The comments do not speak to Glasgow's prior possible history of drug use, incarceration, or other bad conduct. These comments merely insinuate that Glasgow had contact with the venireperson's ex-son-in-law, who was then incarcerated and used illicit drugs, and that the venireperson had some type of opinion of Glasgow. Moreover, any prejudicial effect of the statement was significantly tempered by Singleton's explicit statement that he could be convinced that Glasgow was not guilty and could be fair and impartial.

The insufficiency of the current complaint can be better illustrated by other cases where a venireperson's comments were significantly more prejudicial and still did not require quashal or new trial. In *State v. Weekley,* 92 S.W.3d 327, 330–31 (Mo.App. S.D.2002), a venireperson said that he had seen the defendant's name in the newspaper and police records. These comments were not so prejudicial so as to require a new trial. Furthermore, in *State v. Weidlich,* 269 S.W.2d 69, 71 (Mo.1954), the trial court had discretion not to quash a venire panel even after one of the prospective jurors called the defendant a thief. The statement made in the current case is entirely less prejudicial, it is a mere reference of knowledge through an incarcerated individual, and not a statement as to the guilt of Glasgow or prior bad acts.

■ Secondly, Glasgow argues he was prejudiced because his trial counsel's failure to renew his complaint regarding the venireperson's statements because the issue was then unpreserved for appellate review. " '[C]laims for post-conviction relief based on trial counsel's failure to adequately preserve issues for appeal are not cognizable under Rule 29.15.' " *State v. Beckerman,* 914 S.W.2d 861, 864 (Mo.App. E.D.1996). *See also State v. Lay,* 896 S.W.2d 693, 702 (Mo.App. W.D.1995);

*State v. Grice,* 914 S.W.2d 360, 370 (Mo. App. E.D.1995); *Woods v. State,* 861 S.W.2d 577, 582 (Mo.App. W.D.1993); *State v. Loazia,* 829 S.W.2d 558, 569–70 (Mo.App. E.D.1992); *Kirk v. State,* 778 S.W.2d 661, 662 (Mo.App. E.D.1989) ("[M]ovant does not claim that his trial counsel's inaction affected the fairness of his trial. He claims counsel's inaction affected his ability to appeal the conviction. As such, this point relied on does not state a claim cognizable under Rule 29.15."). While failing to object to trial error may negatively impact the right to effective assistance of trial counsel, it is unclear how the failure to preserve an issue for appeal affects the right to a fair trial. The second prong of Glasgow's attack of the judgment is, therefore, without merit.

■ Despite precedent to the contrary, Glasgow argues that refusing to analyze his attorney's failure to preserve error for appeal would jeopardize his constitutional rights. Glasgow argues:

> To the extent that the Missouri case law can be interpreted as categorically excluding a claim of ineffective assistance of counsel for failure to raise an issue in a motion for new trial, this violates Mr. Glasgow's Sixth Amendment right to effective assistance of counsel because an important part of ensuring an accused received a fair trial is providing a meaningful review on appeal.

The right to effective assistance of counsel is only a component of the greater constitutional right to a fair trial. "[P]ost-conviction relief for ineffective assistance of counsel is limited to errors which prejudiced the movant by denying him [the right to] a fair trial." *Kirk,* 778 S.W.2d at 662. We have already addressed Glasgow's complaint in the context of the fairness of the trial. The preservation of an issue for appeal cannot affect the fairness of the trial; preservation only affects

rights and standards on appeal. We decline Glasgow's invitation to overrule nearly twenty years of our own precedent in the face of the lack of supporting citation for his position or a more detailed rationale for such a clear deviation.

### Investigation of Plea Agreement and Other Favorable Treatment

 An attorney's failure to investigate and expose the bias of a witness who testifies favorably for the State can be grounds for an ineffective assistance of counsel claim under Rule 29.15. Claims of ineffective assistance of trial counsel based on a complaint that trial counsel completed insufficient investigation must allege the specific information the attorney failed to discover, that reasonable investigation would have disclosed that information, and that information would have been beneficial to the defendant. *Rice v. State,* 585 S.W.2d 488, 493 (Mo. banc 1979). Glasgow fails to show that the trial court clearly erred by failing to find specific unexposed information that would have been beneficial to his defense.

The motion court entered a judgment finding "there were no undisclosed benefits offered to Billups." Glasgow does not argue that an attorney's failure to investigate a witness's hope for unmerited leniency in exchange for testimony will generally be sufficient to warrant reversal. *See generally State v. Jones,* 955 S.W.2d 5, 10 (Mo.App. W.D.1997) (finding ineffective assistance of counsel where counsel failed to investigate the existence of a firm deal). Glasgow has not presented conclusive evidence of unexposed collusion between Billups and the State which, had it been discovered, would have further drawn her credibility into significant question. Evidence sufficient to show that a plea deal existed is not automatically evidence that will necessarily compel a trial court to show there was in fact an undisclosed plea deal. *Middleton v. State,* 103 S.W.3d 726, 734 (Mo. banc 2003).

Glasgow argues that a reasonably competent attorney would have realized that Ginger Billups would receive benefits for agreeing to testify against Glasgow, investigated any such arrangement, and then would have presented this evidence to the jury. According to Glasgow, the State offered to dismiss a motion to revoke her probation, charge her with two class B felonies rather than two class A felonies for an unrelated incident, and offered her a plea deal consisting of a ten-year sentence with 120–day call-back probation in exchange for her favorable testimony in the Glasgow case. He continues to argue that had trial counsel examined the public records or, alternatively, deposed or interviewed Billups to uncover the extent of her deal with the State, he would have realized that the State's motion to revoke probation was dismissed after she agreed to be a confidential informant.

Billups's attorney testified in the post-conviction hearing that he had discussions with the State in October of 2001 concerning the State's position on a possible deal if Billups would plead guilty to her two class B felony charges. Her attorney believed that if she plead guilty, the State would recommend a ten-year sentence with 120–day call-back probation. Billups's attorney testified that while there was an assumption that Billups would continue to cooperate with the State in the Glasgow matter, it was not part of the plea offer. Billups, the State, and her attorney all concur that, while there was a plea offer, it was not conditioned on her provision of favorable testimony in Glasgow's case. Both the prosecutor and Billups testified there was

no deal.[7] Glasgow presents no evidence of a plea offer beyond what was presented to the jury, either implicit or explicit, that was made conditional on Billups's testimony at Glasgow's trial.[8] And, in any event, Billups rejected the State's offer, pled guilty, and sought leniency from the court. She received straight probation, without the 120–day call-back.[9] The motion court had sufficient evidence to conclude there was no unexposed tacit understanding of quid pro quo between Billups and the State and that Billups actually accepted a benefit afforded for her testimony.

Furthermore, in the post-conviction relief evidentiary hearing, Glasgow presented no testimony as to the State's reason for dismissing its motion to revoke probation.[10] The prosecutor in the more recent charges against her testified that he did not request that the motion to revoke probation be dismissed. He testified the dismissal of the motion to revoke probation came independently from a prosecutor in a separate county. Furthermore, the State had considerable reason for charging Billups with class B felonies rather than class A felonies—it lacked evidence concerning the aggravating element.[11]

Because Glasgow does not present evidence that the State offered a lenient sentence to Billups in exchange for favorable testimony, her testimony would not have been subject to additional substantial impeachment. Glasgow adequately exposed any understanding between the State and Billups. Trial counsel's questioning of Billups as to her desired leniency after testifying truthfully for the State sufficiently describes the evidence and brought her motives into question. Additional investigation and testimony concerning the plea offer, never accepted and not conditioned on favorable testimony, would not have significantly improved Glasgow's case.

### Brady—Failure to Disclose Material Information

 Glasgow argues that his counsel's failure to investigate coupled with the prosecutor's failure to disclose material evidence violated his right to due process. "Prosecutors must disclose, even without a request, exculpatory evidence, including evidence that may be used to impeach a government witness." *State v. Robinson,* 835 S.W.2d 303, 306 (Mo. banc 1992). *See also Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Deals and promises of leniency in exchange for particular testimony must be disclosed under *Brady.* *Hutchison v. State,* 59 S.W.3d 494, 496 (Mo. banc 2001). The State must disclose more than just iron-clad plea agreements. Tacit agreements must be disclosed as well. *Wisehart v. Davis,* 408 F.3d 321, 324 (7th Cir.2005). However, a "nebulous expectation" of leniency in ex-

---

7. The prosecutor testified via deposition.

8. These facts are similar to those of *Middleton v. State,* 103 S.W.3d 726, 734 (Mo. banc 2003). There, the State's witness was questioned about and denied a plea offer in exchange for his favorable testimony. The trial court then found that no plea deal existed and there was, therefore, no error.

9. Glasgow disputes this statement. All evidence of a plea offer admitted by Glasgow contains a 120–day call-back probation. Billups did not serve under a 120–day incarcera-

tion. While there is no testimony in the post-conviction relief hearing that Billups rejected every offer, there is testimony that she rejected every offer that Glasgow disclosed.

10. The State's brief presents a reasonable explanation for the dismissal of this motion unrelated to the Glasgow case: Billups was working as a confidential informant.

11. The State lacked evidence that Billups's sale of drugs took place within 2,000 feet of a school zone.

change for testimony will not require a *Brady* disclosure. *Goodwin v. Johnson,* 132 F.3d 162, 187 (5th Cir.1998).

Nevertheless, as indicated above, the lower court was not clearly erroneous in concluding that there was no "tacit agreement" between the State and Billups. As discussed in the preceding section, the evidence does not conclusively demonstrate that the State had either an explicit or implicit undisclosed agreement with Billups. Significant evidence tends to show there was no deal or understanding beyond that which was exposed. We cannot, therefore, conclude the State violated the *Brady* principles of disclosure.

## Conclusion

Glasgow was not deprived effective assistance of counsel. Nor was his right to a fair trial violated by the State's failure to disclose material information. The judgment of the motion court is affirmed.

SMITH and NEWTON, JJ., concur.