

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED111821 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | Pike County |
| vs. | ) | |
| | ) | Honorable Patrick S. Flynn |
| DOUGLAS BERKEY, | ) | |
| | ) | |
| Appellant. | ) | Filed: November 19, 2024 |

## Introduction

Douglas Berkey ("Berkey") appeals the circuit court's judgment entered upon a jury verdict convicting him of one count of first-degree statutory sodomy, one count of second-degree child molestation, and one count of first-degree endangering the welfare of a child. In his sole point on appeal, Berkey claims the circuit court erred when it overruled his motion for a mistrial after a jury panel member disclosed Berkey had been incarcerated. He argues the comment revealed a prior, unrelated conviction and that this revelation compelled him to testify. Because Berkey did not demonstrate the comment referred to a prior, unrelated conviction and because he voluntarily testified, Point I is denied. The circuit court's judgment is affirmed.

## Factual and Procedural Background

Because Berkey does not challenge the sufficiency of the evidence, this Court will recount only the facts relevant to his point on appeal. The State charged Berkey with one count of first-

degree statutory sodomy, one count of second-degree child molestation, and one count of first-degree endangering the welfare of a child. During a pre-trial conference, Berkey requested the State refrain from mentioning his prior convictions unless he testified, to which the State agreed.

During voir dire, the circuit court asked if anyone on the panel had a relationship with Berkey which would prevent them from being fair and impartial. One panel member testified:

[PANEL MEMBER 44][1]: I worked in the sheriff's office for seventeen years.

THE COURT: Okay.

[PANEL MEMBER 44]: And Mr. Berkey –

THE COURT: Okay.

[PANEL MEMBER 44]: -- was incarcerated there when --

THE COURT: Okay. And would anything about -- Without going into anything here, anything about that that would cause you a problem with being fair and impartial in this case?

[PANEL MEMBER 44]: I'm really unsure, sir.

THE COURT: You're unsure?

[PANEL MEMBER 44]: Uh-huh.

THE COURT: Okay. And you're [Panel Member 44], is that correct?

[PANEL MEMBER 44]: Yes, sir.

THE COURT: You want to step forward, sir?

Outside the hearing of the panel, Panel Member 44 revealed Berkey had been incarcerated five to seven years ago for "quite some time." He could not recall why Berkey was incarcerated but repeated he was unconvinced he could be impartial. He was removed for cause. Berkey's trial counsel then moved for a mistrial, arguing Panel Member 44 had tainted the jury pool with

---

[1] The panel member's name is removed to protect his privacy.

knowledge of a prior, unrelated conviction. The circuit court found the testimony only demonstrated Berkey had been incarcerated, not that he had been convicted. It further noted most of the prejudicial information occurred at the side bar and overruled the motion for mistrial. The circuit court offered to instruct the jury to disregard the incarceration comment. Berkey's trial counsel declined the request because he worried the instruction would only highlight it.

Before Berkey testified, the circuit court engaged him in a detailed colloquy:

THE COURT: Okay. Mr. Berkey, so before you testify today, you do understand that you have a constitutional right to remain silent, correct?

[BERKEY]: Yes, I do.

THE COURT: You understand that anything you say here can or may be used against you, correct?

[BERKEY]: Absolutely.

THE COURT: And you understand that the State has the ability in which to cross-examine you on everything that you have, okay?

[BERKEY]: Right.

THE COURT: And up to this point, Mr. Berkey, while the Court is aware of previous criminal history.

[BERKEY]: Yes, sir.

THE COURT: The jury is not aware of that. Do you understand that by taking the stand, then that becomes the ability for that evidence to be brought before the jury?

[BERKEY]: Yes.

THE COURT: Do you understand that?

[BERKEY]: Uh-huh.

THE COURT: And do you, sir, understand, that in the event that you would choose not to testify, that the jury can be told not to hold that against you?

[BERKEY]: Yes, I do.

THE COURT: Okay. And with that said, is it my understanding that you are wanting to testify?

[BERKEY]: Yes, sir.

After this exchange, Berkey affirmed his trial counsel had advised him on testifying and he had taken that advice into consideration. Berkey's trial counsel then renewed his motion for mistrial. He informed the circuit court Berkey had decided to testify in part because of Panel Member 44's lone incarceration comment. The circuit court then addressed Berkey:

[THE COURT]: Certainly by testifying now, [Berkey's criminal history] can come open and be fully examined as to the credibility -- for purposes of credibility of the Defendant and as a witness in this case. So Mr. Berkey, you're aware of that, correct?

[BERKEY]: Yes, sir.

THE COURT: Okay. So you understand that all of that, although a simple statement that you were incarcerated, without anything else, will -- can now be expounded on. You understand that?

[BERKEY]: Yes.

The circuit court overruled the renewed motion for mistrial.

The State elicited on cross-examination that Berkey had two prior Missouri methamphetamine convictions, a California conviction for theft of a firearm, and that he had fled from the county after his fiancée confronted him about these sexual abuse allegations. The jury convicted him on all counts. Berkey raised this claim of error in his motion for a new trial, which the circuit court overruled. This appeal follows.

**Standard of Review**

"A mistrial is a drastic remedy that should be granted only in extraordinary circumstances." *State v. Graves*, 619 S.W.3d 570, 575 (Mo. App. E.D. 2021). "A circuit court's denial of a mistrial is reviewed for a 'manifest abuse of discretion.'" *Id.* (quoting *Spence v. BNSF Ry. Co.*, 547 S.W.3d

4

769, 780 (Mo. banc 2018)). "To establish a manifest abuse, there must be a grievous error where prejudice otherwise cannot be removed." *Id.* (quoting *Sherrer v. Boston Scientific Corp.*, 609 S.W.3d 697, 705 (Mo. banc 2020)).

## Discussion
*Point I: Lone Incarceration Comment During Voir Dire Deprived Berkey of His Right to Due Process*
*Party Positions*

In his sole point on appeal, Berkey argues the circuit court erred in overruling his motion for a mistrial because he was deprived of his due process rights when Panel Member 44 disclosed he had been incarcerated. He contends this lone comment prejudiced him because it revealed prior, unrelated convictions to the venire panel. Berkey also alleges he was compelled to testify because of this lone comment, which resulted in the State eliciting his prior, unrelated convictions and his flight from the county.[2] The State argues the lone comment was too vague to refer to a prior, unrelated conviction.

*Analysis*

First, Berkey argues he was prejudiced because the lone incarceration comment revealed a prior, unrelated conviction. "To demonstrate the necessity of striking the entire panel because of improper comments, [a] defendant must demonstrate that the comments were 'so inflammatory and prejudicial that it can be said that a right to a fair trial has been infringed.'" *State v. Thompson*, 985 S.W.2d 779, 789 (Mo. banc 1999) (quoting *State v. Evans*, 802 S.W.2d 507, 514 (Mo. banc 1991)). "When the defendant claims that the impartiality of the panel is tainted by comments

---

[2] This point relied on is impermissibly multifarious and does not comply with Rule 84.04(d). Specifically, Berkey argues the lone incarceration comment prejudiced him for two reasons: (1) the lone comment revealed a prior, unrelated conviction and (2) the lone comment compelled him to testify. These two arguments were raised in separate numbered paragraphs in Berkey's motion for new trial. While Berkey's multifarious point does not comply with the mandatory briefing requirements of Rule 84.04, this Court exercises its discretion to review the point *ex gratia* because the argument is readily understandable. *Veazie-Gallant v. Brown*, 620 S.W.3d 641, 652 n.4 (Mo. App. E.D. 2021).

5

offered during voir dire, the defendant has the burden to show prejudice." *Glasgow v. State*, 218 S.W.3d 484, 488 (Mo. App. W.D. 2007).

Courts have considered statements similar to Panel Member 44's and have concluded the defendant did not prove they referred to a prior, unrelated conviction. In *State v. Releford*, the prosecutor asked if anyone on the panel recognized the defendant. *State v. Releford*, 750 S.W.2d 539, 543 (Mo. App. W.D. 1988). One panel member raised his hand and explained he was a chaplain at the Jackson County Jail. *Id.* When asked if he knew the defendant, the panel member responded, "Not personally." *Id.* The Court held the defendant did not demonstrate prejudice because the comment was too vague to show the panel member "recognized the defendant from the Jackson County Jail." *Id.* Even if he did, the jurors "had to know that [the defendant] was incarcerated" because the circuit court posted three armed guards in the courtroom during the trial. *Id.* In other words, the comment was vague enough it could refer either to a prior, unrelated conviction or to his pre-trial detention for the current offense. *Id.* The Court held the defendant had not demonstrated this comment referred to a prior, unrelated conviction. *Id.* Likewise, in *State v. Davis*, when the prosecutor asked if anyone knew the defendant, one panel member responded, "I'm not sure. I may know this man, because I work downtown at the City Jail." *State v. Davis*, 806 S.W.2d 441, 443 (Mo. App. E.D. 1991). The Court held this remark "did not indicate that he in fact knew or recognized [the] defendant" nor did it "suggest[] that [the] defendant had been incarcerated in the city jail for prior, unrelated crimes." *Id.* Hence, the Court held the defendant did not demonstrate the comment referred to a prior, unrelated conviction. *Id.*

The remarks in *Releford* and *Davis* are analogous to Panel Member 44's lone comment. It is true the comments in those cases were not direct references to incarceration; there, prejudice (if any) could only attach through an inference to a prior, unrelated conviction. Here, Panel Member

6

44 directly stated he knew Berkey because he was previously incarcerated. This is a distinction without a difference. The crucial element of *Releford* and *Davis* is that the defendants failed to demonstrate the voir dire comments referred to a prior, unrelated conviction. The same is true here.

Panel Member 44 only revealed Berkey was "incarcerated" to the panel. He did not reveal when Berkey was incarcerated, how long he had been incarcerated, or—most importantly— whether the incarceration was because of a prior, unrelated conviction. Panel Member 44 only testified he worked at the Sheriff's Department and knew Berkey to have been incarcerated sometime during that span. As in *Releford*, this lone incarceration comment could have referred to a prior incarceration or only to Berkey's pre-trial detention for the current case. This would not have prejudiced him because "it [is] common knowledge that persons charged with crimes are arrested and placed in jail until they make bond." *State v. Cooper*, 541 S.W.2d 40, 44 (Mo. App. 1976); *see also Releford*, 750 S.W.2d at 543. While more direct than the remarks in *Releford* and *Davis*, Berkey did not demonstrate the lone comment the jury heard referred to a prior, unrelated conviction. At most, the remark showed Berkey was arrested and jailed for some unknown charge at some unknown point in the past. It did not prove a prior, unrelated conviction.

Second, Berkey argues he was "compelled" to testify after Panel Member 44's lone incarceration comment. Because of this compulsion, he asserts, the jury learned of his prior criminal acts and his flight from the county. The Fifth Amendment to the United States Constitution provides, "No person shall … be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Missouri Constitution similarly states "no person shall be compelled to testify against himself in a criminal case." Mo. Const. art. I § 19. "The principles to be followed in applying these two provisions are consistent." *State ex rel. Nothum v. Walsh*, 380 S.W.3d 557, 562 (Mo. banc 2012) (quoting *State ex rel. Munn v. McKelvey*, 733

7

S.W.2d 765, 767 (Mo. banc 1987)). Hence, this right "protects the individual against being involuntarily called as a witness against himself in a criminal prosecution …." *Id.* (quoting *Lefkowitz v. Turley,* 414 U.S. 70, 77 (1973)).

Criminal defendants can waive their constitutional rights. *Allen v. State*, 50 S.W.3d 323, 327 (Mo. App. W.D. 2001). "When a defendant chooses to waive a constitutional right, the waiver must be voluntarily, knowingly, and intelligently made." *State v. Driskill*, 459 S.W.3d 412, 426 (Mo. banc 2015) (citing *State v. Bracken*, 382 S.W.3d 206, 211 (Mo. App. E.D. 2012)). "The law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances— even though the defendant may not know the *specific detailed* consequences of invoking it." *Id.* (quoting *United States v. Ruiz*, 536 U.S. 622, 628 (2002) (emphasis in original) (determining whether a guilty plea was made voluntarily)). Accordingly, the "best practice for a trial court is to question the defendant personally, on the record, to ensure that the defendant understands the right, understands what is lost in the waiver, has discussed the issue with defense counsel, and voluntarily intends to waive the right." *Id.* (quoting *State v. Baxter,* 204 S.W.3d 650, 654–55 (Mo. banc 2006) (determining if a waiver of right to be present in courtroom is effective)). "Following this procedure, a defendant later has no argument to later declare the waiver was ineffective." *Id*.

Here, the circuit court questioned Berkey personally and on the record. It went to great lengths to ensure he understood the rights he was abandoning by taking the witness stand. The circuit court informed Berkey he had a constitutional privilege against self-incrimination, the State had the ability to cross-examine him, the jury would now learn about his criminal history, and they could not hold his refusal to testify against him. Berkey testified he understood these rights and the consequences of waiving them. He testified he had discussed testifying with his counsel. The

8

circuit court responded, "Okay. And with that said, is it my understanding that you are wanting to testify?" Berkey responded, "Yes, sir." The circuit court also informed Berkey that "by testifying now … you understand that … a simple statement that you were incarcerated … can now be expounded upon. You understand that?" Berkey responded, "Yes." The circuit court went above and beyond the best practices in notifying Berkey not only about the general consequences of his waiver but also the specific detailed consequences of testifying relating to his prior incarceration. Berkey, of his own volition, chose to waive his constitutional rights and testify. The jury only heard evidence about his prior convictions and flight from the county because of his voluntary, informed choice to testify in his own defense, not from the lone incarceration comment during voir dire. Thus, because Berkey affirmed he understood his rights and what he was abandoning by testifying after a detailed colloquy with the circuit court, he has no argument to declare he was "compelled" before this Court.

Berkey did not demonstrate the lone incarceration comment referred to a prior, unrelated conviction. He was not compelled to testify because he took the witness stand voluntarily after being informed of his constitutional right to remain silent. The revelation of his prior criminal acts and his flight from the county resulted from that voluntary choice, not the lone incarceration comment. The circuit court thus did not commit a manifest abuse of discretion by overruling Berkey's motion for a mistrial. Point I is denied.

### Conclusion

The circuit court's judgment is affirmed.

_____
Philip M. Hess, Presiding Judge

Gary M. Gaertner, Jr., J. and
Renée Hardin-Tammons, J. concur.

9